Marc Van Der Hout (CA Bar #80778)
Johnny Sinodis (California Bar # 290402)
Van Der Hout LLP
360 Post St., Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003
Email: ndca@vblaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| John Doe,<br><br>           Plaintiff,<br><br>    v.<br><br>Donald J. TRUMP, in his official capacity, President of the United States of America;<br><br>Moises BECERRA, in his official capacity, Acting Field Office Director of San Francisco Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security;<br><br>Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; and<br><br>Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security;<br><br>           Defendants. | Case No. 4:25-cv-03140-DMR<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION: HEARING REQUESTED**<br><br>Request for Declaratory and Injunctive Relief |

## **NOTICE OF MOTION**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Rule 65-1 of the Local rules of this Court, Plaintiff hereby moves this Court for an order enjoining Defendants Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), Moises Becerra in his official capacity at the Acting Field Office Director of the San Francisco ICE Office of Detention and Removal, and Donald J. Trump in his official capacity as President of the United States of America, from taking any enforcement action against Plaintiff arising directly or indirectly the unlawful termination of their Student and Exchange Visitor Information Systems ("SEVIS") records or the potential unlawful revocation of their F-1 visa. Such enforcement action includes: detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, and removing Plaintiff from the United States pending these proceedings.

Plaintiff, through this temporary restraining order, therefore seeks an order preventing Defendants from arresting and incarcerating them in an immigration jail pending the resolution of these proceedings. Plaintiff further seeks that Defendants revocation of Plaintiff's SEVIS account be declared without legal force for the duration of this litigation, which is necessary to maintain the status quo in their case whereby they continue to be in valid F-1 nonimmigrant status, continue to work pursuant to their valid F-1 status (and their underlying valid Form I-20, Certificate of Eligibility for Nonimmigrant Student Status), and may seek the concomitant benefits of that valid status, such as the legal eligibility to change status to another nonimmigrant visa status, while this litigation remains pending.

Plaintiff also seeks an order requiring parties to redact or file any information identifying Plaintiff under seal, and an order limiting the sharing by government counsel of any information about Plaintiff's identity or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation.

The reasons in support of this Motion are set forth in the accompanying Memorandum of

Points and Authorities. This Motion is based on the Complaint for Declaratory and Injunctive Relief Under the Administrative Procedure Act and the Declaratory Judgment Act, as well as the Declaration of Johnny Sinodis. As set forth in the Points and Authorities in support of this Motion, Plaintiff raises that they warrant a temporary restraining order due to their weighty liberty interests under the Due Process Clause of the Fifth Amendment in remedying the unlawful termination of their SEVIS statuses, to preserve their status quo ability to pursue their post-graduate employment, and to prevent against any further enforcement action by the government stemming from this unlawful SEVIS termination.

WHEREFORE, Plaintiff prays that this Court grant their request for a temporary restraining order enjoining Defendants from arresting and incarcerating Plaintiff pending resolution of these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, and removing Plaintiff from the United States pending these proceedings, as well as an order that Defendants' termination of Plaintiff's SEVIS record be declared without legal force for the duration of this litigation, which is necessary to maintain the status quo in their case, such that they may continue to work pursuant to their F-1 student status under their STEM OPT while this litigation remains pending.

Plaintiff also requests that the Court issue an order requiring parties to redact or file any information identifying Plaintiff under seal, and an order limiting the sharing by government counsel of any information about Plaintiff's identity or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation.

The only mechanism to ensure that Plaintiff is not unlawfully detained, transferred, or removed in violation of their due process rights, or subject to further irreparable harm resulting from the unlawful termination of their SEVIS account, is an ex-parte temporary restraining order from this Court.

Dated: April 16, 2025                    Respectfully Submitted

                                         /s/ Johnny Sinodis
                                         Johnny Sinodis
                                         Attorney for Plaintiff

ii

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS AND CASE ......................................................... 4

    A.  Plaintiff John Doe ................................................................................ 5

III.  LEGAL STANDARD ...................................................................................... 6

IV.   ARGUMENT ..................................................................................................... 7

    A.  Plaintiff Warrants a Temporary Restraining Order ....................... 7

        1.    Plaintiff is Likely to Succeed on the Merits of Their Claims That Defendants' Actions Violated the Administrative Procedure Act and Plaintiff's Due Process Rights ............................................ 7

        2.    Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief ............... 14

        3.    The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order ........................................ 16

        4.    Plaintiff Has Complied With the Requirements of Rule 65 ........................ 18

V.    CONCLUSION ................................................................................................ 19

Notice of Motion for Ex Parte TRO/PI                    Case No. 4:25-cv-03140-DMR

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................. 7
*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ......................................................... 17, 18
*Armstrong v. Manzo*,
    380 U.S. 545 (1965) ................................................................................ 13
*ASSE Int'l, Inc. v. Kerry*,
    803 F.3d 1059 (9th Cir. 2015) ............................................................... 13
*Baldwin v. Hale*,
    68 U.S. 223 (1864) ................................................................................. 13
*Borden v. United States*,
    593 U.S. 420 (2021) ............................................................................... 10
*Brown v. Holder*,
    763 F.3d 1141 (9th Cir. 2014) ............................................................... 13
*D.V.D. v. U.S. Dep't of Homeland Sec.*,
    2025 WL 942948 (D. Mass. Mar. 28, 2025) .......................................... 3
*Fuentes v. Shevin*,
    407 U.S. 67 (1972) ................................................................................. 13
*Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda*,
    415 U.S. 423 (1974) ................................................................................. 7
*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ......................................................... 17, 18
*Jie Fang v. Dir. United States Immigr. & Customs Enf't*,
    935 F.3d 172 (3d Cir. 2019) ........................................................... 10, 11
*Lopez v. Heckler*,
    713 F.2d 1432 (9th Cir. 1983) ............................................................... 17
*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ............................................................................... 13
*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ................................................................. 18
*Nakka v. United States Citizenship & Immigr. Servs.*,
    111 F.4th 995 (9th Cir. 2024) ............................................................... 11
*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ................................................................. 18
*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ................................................................... 6
*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ............................................................... 17
*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................................... 6
*Zepeda v. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) ................................................................. 16

iv

Statutes

5 U.S.C. § 705..................................................................................................... 12, 19, 20
5 U.S.C. § 706(2)(A), (C)-(D) ................................................................................. 12, 13
5 U.S.C. § 706(2)(B) ...................................................................................................... 13
8 U.S.C. § 1101(a)(15)(F)(i) ............................................................................................ 8
8 U.S.C. § 1182(d)(3) or (4) .......................................................................................... 10
8 U.S.C. § 1201(i) .......................................................................................................... 11
8 U.S.C. § 1227(a)(1)(B) ............................................................................................... 11
8 U.S.C. § 1227(a)(1)(C) ................................................................................................. 5
8 U.S.C. § 1227(a)(1)(C)(i) ........................................................................................... 11
8 U.S.C. § 1227(a)(4)(C)(i) ........................................................................................... 11
8 U.S.C. § 1252(a)(1) .................................................................................................... 11
Public Law 107-56, 115 Stat. 2001 ................................................................................. 9

Rules

Fed. R. Civ. P. 65(b) ........................................................................................................ 7

Regulations

8 C.F.R. § 214.1(b)(iv) ..................................................................................................... 8
8 C.F.R. § 214.1(d) ............................................................................................. 10, 11, 12
8 C.F.R. § 214.1(g) ........................................................................................... 5, 6, 9, 12
8 C.F.R. § 214.2(f) ................................................................................................. 8, 9, 12
8 C.F.R. § 214.2(f)(10)(A)(3), (C) ................................................................................... 8
8 C.F.R. § 214.3(g)(2) ...................................................................................................... 9
8 C.F.R. § 1003.18(d)(ii)(B) .......................................................................................... 11
8 C.F.R. § 1241.1 ........................................................................................................... 11
8 C.F.R. §§ 214.1(e)–(f) ................................................................................................ 12
8 C.F.R. §§ 214.1(e)–(g) .................................................................................................. 9

Other Authorities

ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), ................................. 10
Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016)......... 10

Notice of Motion for Ex Parte TRO/PI                    Case No. 4:25-cv-03140-DMR

# I.    __INTRODUCTION__

Plaintiff John Doe, by and through undersigned counsel, hereby files this motion for a temporary restraining order and preliminary injunction to prevent Defendants from taking any enforcement action against Plaintiff arising directly or indirectly from the unlawful termination of their Student and Exchange Visitor Information System ("SEVIS") record or the potential unlawful revocation of their F-1 visa.[1] Such enforcement action includes detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, and removing Plaintiff from the United States pending these proceedings.

Plaintiff, through this temporary restraining order, also asks that the Court enjoin Defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the decision to terminate Plaintiff's SEVIS record, until the merits of Plaintiff's Complaint are resolved. Plaintiff further seeks to maintain the status quo whereby they may continue to work pursuant to their F-1 student status (and underlying valid Form I-20, Certificate of Eligibility for Nonimmigrant Student Status), and concomitant Science, Technology, Engineering, and Mathematics ("STEM") Optional Practice Training ("OPT"), as well as change status to another nonimmigrant visa status, while this litigation remains pending.

Plaintiff also seeks an order requiring the parties to redact or file any information identifying Plaintiff under seal, and an order limiting the sharing by government counsel of any information about Plaintiff's identity or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation.

Plaintiff is an individual in lawful F-1 visa status who is maintaining their status and is now employed pursuant to post-graduate STEM OPT employment authorization. They are one of hundreds, if not more, F-1 students nationwide whose SEVIS records have been abruptly and

---

[1] To date, Plaintiff has not received notification that their visa has been revoked and has no way to verify whether or not DOS has revoked their visa without DOS informing them.

unlawfully terminated by the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), since approximately March 28, 2025, in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis.

There are two distinct but related problems with ICE's termination of Plaintiff's SEVIS record. First, the grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiff's SEVIS record, and neither do the underlying facts referred to by ICE, as they do not amount to any violation of Plaintiff's lawful status. Second, ICE appears to be taking the position that the termination of an individual's SEVIS record effectively ends their F-1 visa status, which is not the case. Even when a visa is revoked—and it is not clear that Plaintiff's visa was in fact revoked—ICE is not authorized to terminate Plaintiff's F-1 student status, as explained below. Here, Plaintiff has been in full compliance with the terms of their F-1 status and has not engaged in any conduct that would warrant termination of their status.

Rather, ICE's policy of unlawfully terminating SEVIS records—whether in conjunction with F-1 visa revocations or not—appears to be designed to coerce students, including Plaintiff, into abandoning their studies or post-graduate employment and choosing to voluntarily leave the country, despite not having violated their status. For example, on March 5, 2025, DOS informed a graduate student at Columbia University, Ranjani Srinivasan, that her F-1 student visa had been cancelled, with her SEVIS subsequently terminated.[2] On March 14, 2025, Secretary of Homeland Security Kristi Noem issued a post on X, accompanied by a video of Ranjani Srinivasan: "I'm glad to see one of the Columbia University terrorist sympathizers use the CBP Home app to self deport."[3] On information and belief, several students have received an email in includes the following language:

> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United

---

[2] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristinoem-video.html.

[3] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), *available at* https://x.com/Sec_Noem/status/1900562928849326488.

States.  Persons being deported may be sent to countries other than their countries of origin.[4]

Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App at https://www.cbp.gov/about/mobile-apps-directory/cbphome.[5]

Other students who have had their F-1 visa revoked and/or SEVIS record terminated have been arrested and detained, sometimes before even learning their visa had been revoked at all. On information and belief, there is a policy and practice of transferring these individuals far from their homes, school, and communities, by physically moving them to detention centers in Texas and Louisiana once detained. There have been several high-profile cases of immigration arrests in New York, Washington D.C., and Boston, in which the government quickly moved the detainees across state lines to detention facilities in Louisiana and Texas.[6] On information and belief, there are several additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved far from their home, school/employer and community, to a detention facility in Texas or Louisiana the day before or day of their bond hearing in immigration court.

If ICE believes a student is deportable for having violated their visa status, or any other lawful reason, it has the authority to initiate removal proceedings and make its case in immigration court. ICE cannot, however, misuse SEVIS to circumvent the law, strip students of

---

[4] This, despite the fact that a district court has temporarily enjoined the U.S. government from removing noncitizens to third countries. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 942948, at *1 (D. Mass. Mar. 28, 2025).

[5] *See, e.g.*, Courtney Tanner, *20 University of Utah international students see visas revoked by Trump admin*, The Salt Lake Tribune (Apr. 8, 2025), available at: https://www.sltrib.com/news/education/2025/04/08/trump-admin-revokes-visas-17/.

[6] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); *What we know about the Tufts University PhD student detained by federal agents*, CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html (Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).

status, and drive them out of the country without process. ICE similarly cannot engage in retaliatory arrests and transfers – without legal basis if the SEVIS termination was unlawful – to further intimidate students into abandoning their studies and fleeing the country to avoid arrest.

Plaintiff meets the standard for a temporary restraining order. *See* Sinodis Declaration ("Sinodis Decl.") at <u>Exh. A</u> (Order from the Honorable Judge James A. Soto, District of Arizona, granting a temporary restraining order to a similarly situated Plaintiff). They will suffer immediate and irreparable harm absent an order from this Court enjoining Defendants from taking further unlawful action stemming from the unlawful termination of their SEVIS record—including arrest and detention—during the pendency of these proceedings. Since holding federal agencies accountable to constitutional demands is in the public interest, the balance of equities and public interest also tip strongly in Plaintiff's favor.

## II.    STATEMENT OF FACTS AND CASE

As mentioned above, Plaintiff John Doe is an individual in lawful F-1 visa status who is maintaining their status by being employed pursuant to post-graduate OPT employment authorization. He was set to change status from F-1 status to H-1B nonimmigrant worker status on June 28, 2025, following the expiration of his OPT on June 27, 2025. On March 28, 2025, Plaintiff's SEVIS record was abruptly and unlawfully terminated by ICE without any notice or basis for the termination.

SEVIS is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to monitor students' statuses.

On March 28, 2025, SEVP terminated Plaintiff's SEVIS record and marked Plaintiff as "Otherwise Failing to Maintain Status – Individual identified in criminal records check," with no citation to any provision of law that indicates a basis for not maintaining status, or other facts that indicate a lack of status, or an actual violation of their status. Plaintiff has a single misdemeanor conviction in the United States, but this conviction does not violate the terms of their F-1 status or otherwise render them deportable. In fact, DHS has known about Plaintiff's conviction for months and has even granted two immigration benefits applications for them

subsequent to learning of the conviction.

### A. Plaintiff John Doe

Plaintiff is currently employed pursuant to post-graduate STEM OPT employment authorization, which is authorized through their F-1 student status, in the Northern District of California. They are from a predominantly Muslim country. Plaintiff has not engaged in any significant political activity.

Plaintiff first came to study in the United States on a student visa in 2019 and received a graduate degree in 2023. Since that time, Plaintiff has worked in the United States pursuant to their F-1 status and associated employment authorization. DHS previously granted Plaintiff an H-1B visa, and Plaintiff intended to change status from F-1 to H-1B on June 28, 2025, following the expiration of their OPT on June 27, 2025. Plaintiff is married to a U.S. citizen who has also filed a visa petition for Plaintiff so that Plaintiff can obtain lawful permanent resident status. That petition remains pending at this time.

On March 28, 2025, Plaintiff received notice from the university where they obtained their graduate degree, which oversees their post-graduate employment authorization, that their SEVIS record was terminated. To date, Plaintiff has not received notification that their F-1 visa has been revoked and has no way to verify whether or not DOS has revoked their visa without DOS informing them.

The code given for Plaintiff's SEVIS termination was Immigration and Nationality Act ("INA") § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)] – Failure to maintain status. The reason listed was that Plaintiff had been identified in a criminal records check. Plaintiff was informed that the school itself did not terminate their SEVIS status. Plaintiff is unaware of the factual basis for the termination of their SEVIS status, as ICE did not provide that information.

Plaintiff's only criminal history is a minor misdemeanor conviction for which they received probation. The conviction is not for a crime of violence, nor did it carry a potential sentence of more than one year. 8 C.F.R. § 214.1(g) (stating that individuals who commit crimes of violence for which they are sentenced to one year or more in custody are deemed to have violated their student status). It does not render Plaintiff inadmissible to or deportable from the

United States. Importantly, long before the SEVIS termination on March 28, Plaintiff had informed DHS of their criminal conviction. Subsequent to learning of Plaintiff's conviction, DHS twice approved immigration benefits applications for Plaintiff because their minor criminal offense did not render them ineligible for status nor removable from the United States.

Plaintiff is highly valued by their employer, which desires for them to continue to work at the company. However, Plaintiff's ability to do so is in jeopardy due to the termination of their SEVIS record and status.

As mentioned above, Plaintiff is married to a U.S. citizen who struggles with significant mental health issues and who is the primary caretaker for a family member suffering from serious illness. Were Plaintiff arrested and incarcerated in an immigration jail as a result of ICE's unlawful termination of their SEVIS record, Plaintiff and their U.S. citizen spouse would suffer even further excruciating mental, emotional, and financial harm. Intervention from this Court is therefore required to ensure that Plaintiff does not continue to suffer irreparable harm.

### B. Correspondence with Defendants' Counsel

On April 15, 2025, undersigned Counsel reached out to the U.S. Attorney's Office for San Francisco by email to request the opportunity to discuss this motion, and request that the government agree not to arrest Plaintiff during the pendency of the litigation regarding the legality of the termination of their SEVIS account. *See* Sinodis Decl. On April 16, 2025, the U.S. Attorney's Office responded stating that they could not agree at this time not to arrest Plaintiff. *Id.*

## III. LEGAL STANDARD

Plaintiff is entitled to a temporary restraining order where they establish that they are "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). Even if Plaintiff does not show a likelihood of success on the merits, the Court may still grant a

temporary restraining order if they raise "serious questions" as to the merits of their claims, the balance of hardships tip "sharply" in their favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). As set forth in more detail below, Plaintiff overwhelmingly satisfies both standards. *See also* Sinodis Decl. at Exh. A (Order from the Honorable Judge James A. Soto, District of Arizona, granting a temporary restraining order to a similarly situated plaintiff).

## IV.    ARGUMENT

### A.    Plaintiff Warrants a Temporary Restraining Order

A temporary restraining order should be issued if "immediate and irreparable injury, loss, or irreversible damage will result" to the applicant in the absence of an order. Fed. R. Civ. P. 65(b). The purpose of a temporary restraining order is to prevent irreparable harm before a preliminary injunction hearing is held. *See Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*, 415 U.S. 423, 439 (1974). As explained above, Plaintiff's SEVIS record was abruptly and unlawfully terminated by ICE in an apparent attempt to jeopardize their lawful immigration status, with no lawful or valid basis. Other noncitizens in identical situations have received communication from the government suggesting they should immediately leave the country under threat of detention, and even possible deportation to a third country. Given the government's own statements and the actions related to similarly situated international students, Plaintiff is at serious and immediate risk of further unlawful enforcement action by ICE—including arrest, detention, being transferred against their will out of the jurisdiction of this District, and deportation from the United States. The unlawful revocation of their SEVIS record without notice or opportunity to respond, and without legal basis, clearly violated Plaintiff's due process rights and was otherwise arbitrary and capricious. Plaintiff has already suffered irreparable injury to their wellbeing, their U.S. citizen spouse's mental health, and their life as a valued highly skilled software engineer in the United States.

### 1.    Plaintiff is Likely to Succeed on the Merits of Their Claims That Defendants' Actions Violated the Administrative Procedure Act and Plaintiff's Due Process Rights

Plaintiff is likely to succeed on their claim that, by abruptly revoking Plaintiff's SEVIS

1  record without any lawful or valid basis, and without any notice or an opportunity to respond,

2  Defendants acted arbitrarily and capriciously in violation of the Administrative Procedure Act

3  ("APA") and further violated Plaintiff's procedural due process rights.

4      A nonimmigrant visa printed in a passport provides a basis for a noncitizen's

5  admissibility into the United States but does not control their continued lawful stay in the United

6  States after they are admitted. Congress established a statutory basis for student visas under 8

7  U.S.C. § 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to

8  maintain nonimmigrant status. Implementing regulations further permit F-1 nonimmigrants to

9  obtain employment authorization for OPT [optional practice training] "directly related to the

10  student's major area of study." 8 C.F.R. § 214.2(f)(10)(A)(3), (C). Once a holder of an F-1 visa

11  is admitted in F-1 status, a student is granted permission to remain in the United States, not for a

12  fixed period time, as is the case for other nonimmigrant visa holders, but rather for the duration

13  of status (annotated as D/S). That status endures (separate from the validity of the visa itself) as

14  long as they continue to meet the requirements established by the regulations governing their

15  visa classification at 8 C.F.R. § 214.2(f), such as maintaining a full course of study or engaging

16  in authorized post-graduate employment, and avoiding unauthorized employment.

17      In order to obtain an F-1 visa, the school at which the student will study issues a Form I-

18  20 to the student confirming their attendance and enrollment in the school, with an expected

19  duration of study. Often, the Form I-20 is updated as the student's curricular progress is updated,

20  both in substance and duration. For example, in Plaintiff's case, their university issued an I-20

21  confirming their authorized STEM OPT post-graduate employment authorization. As long as

22  there is a valid I-20 issued to the student or post-graduate worker by the school, then the

23  individual is considered to be maintaining their lawful status. *See, e.g.*, 8 C.F.R. § 214.1(b)(iv).

24      Before 2001, there was no centralized database to track student visa holders in the United

25  States, as it is not inherent to the legal ability of a student to maintain status. After 2001,

26  Congress created the SEVIS system to track the status of nonimmigrant visa holders admitted for

27  "duration of status."[7] SEVIS is a centralized database maintained by the SEVP within ICE, and it

28

---

[7] USA Patriot Act of 2001, Public Law 107-56, 115 Stat. 2001.

is used to manage information on nonimmigrant students and exchange visitors and to track their compliance with the terms of their status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials ("DSOs") must report through SEVIS to SEVP when a student or post-graduate employee fails to maintain status. SEVIS termination is governed by SEVP policy and regulations.[8] SEVIS termination can only be based on a student's failure to maintain status.[9]

DHS regulations distinguish between two separate ways a student visa holder may fail to maintain status: (1) a student or post-graduate worker who "fails to maintain status;" and (2) an agency-initiated "termination of status."

The first category—failure to maintain status—involves circumstances where a student or post-graduate worker voluntarily or inadvertently falls out of compliance with the F-1 visa requirements—for example, by failing to maintain a full course of study or authorized post-graduate employment, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

With the respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Arrests that do not result in any conviction, and minor infractions or misdemeanor offenses, do not meet this regulatory threshold for termination based on criminal history. The Supreme Court of the United States has held that a crime of violence "means 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *See, e.g.*, *Borden v. United States*, 593 U.S. 420, 427 (2021).

---

[8] *See SEVIS Termination Reasons*, DHS Study in the States, (last visited Apr. 6, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons.
[9] *See id.*

The second category—termination of status by ICE—can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits ICE to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. ICE cannot otherwise unilaterally terminate nonimmigrant status.[10]

Accordingly, the existence of an arrest (or even minor conviction) does not constitute a basis for SEVIS termination.

Likewise, the revocation of a *visa* does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter the country and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation *after* a student has already been admitted into the United States, because status is not terminated by visa revocation, and the student or post-graduate worker is permitted to continue the authorized course of study or employment.[11]

ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[12] Rather, if the visa is revoked, the student or post-graduate worker is permitted to pursue their course of study in school or authorized post-graduate employment, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[13]

While a visa revocation *can* be charged as a ground of deportability in removal proceedings before an immigration judge, such alleged deportability can be contested in such

---

[10] *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

[11] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

[12] *Id*.

[13] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

proceedings.[14] The immigration judge may dismiss removal proceedings even where a visa is revoked, so long as a student or post-graduate worker is able to remain in valid status.[15] Only when a final removal order is entered would an individual's status be lost. *See* 8 U.S.C. § 1252(a)(1) (General Orders of Removal); 8 C.F.R. § 1241.1 (Final Order of Removal).

A student or post-graduate worker who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter. *See* 8 C.F.R. § 214.1(d) (establishing the three limited circumstances under which DHS can terminate status, none of which is applicable here). Moreover, there is no provision for termination of SEVIS based on law enforcement contact.

The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[16] Only the presence or absence of lawful status can be reviewed by the immigration judge. The termination of a SEVIS record therefore constitutes final agency action for purposes of APA review.[17]

Under § 705 of the APA, to prevent irreparable injury, a reviewing court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." Here, Defendants' actions in abruptly and unlawfully terminating Plaintiff's SEVIS record violated both the APA and Plaintiff's due process rights. Justice therefore requires that this Court prevent further irreparable injury to Plaintiff by issuing this temporary restraining order to preserve Plaintiff's status and rights pending conclusion of the review proceedings and effectively postpone the agency action. 5 U.S.C. § 705.

---

[14] *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).

[15] 8 C.F.R. § 1003.18(d)(ii)(B).

[16] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Fang*, 935 F.3d at 183.

[17] *See id.* at 185.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First, pursuant to § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

As set out above, Defendants had no (and still do not have any) statutory or regulatory authority to terminate Plaintiff's SEVIS record or status, as nothing in Plaintiff's criminal history or immigration history provides a basis for termination. This is true even if DOS has revoked Plaintiff's F-1 visa, as the revocation of an F-1 visa is not a basis for SEVIS termination. Specifically, Plaintiff has not failed to maintain status that would warrant SEVIS termination pursuant to the controlling regulations. 8 C.F.R. § 214.2(f). Plaintiff has not engaged in unauthorized employment and has not provided false information to DHS. 8 C.F.R. §§ 214.1(e)–(f). While Plaintiff has a minor misdemeanor conviction, they have disclosed that conviction to DHS while applying for immigration benefits, and DHS repeatedly approved Plaintiff's applications. Plaintiff does not have any conviction for a crime of violence with a potential sentence of more than a year and, to reiterate, has fully disclosed their sole minor misdemeanor conviction on multiple occasions. 8 C.F.R. § 214.1(g).

Moreover, ICE cannot unilaterally terminate Plaintiff's SEVIS record because the relevant conditions for such termination do not exist: Plaintiff was not previously granted a waiver under INA § 212(d)(3) or (4) that has since been revoked; a private bill to confer lawful permanent residence relevant to Plaintiff has not been introduced in Congress; and ICE has not otherwise published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). What is more, Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status, in violation of the APA. Defendants further failed to articulate any rational connection between the facts found and the decision made.

Accordingly, Defendants' actions in abruptly terminating the SEVIS record of Plaintiff—actions which had no basis in the law—were arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A), (C)-(D). Defendants have

therefore violated the APA.

Second, under § 706(2) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).

Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student (or post graduate worker engaging in authorized post-graduate employment pursuant to student status) in SEVIS is governed by specific and mandatory regulations, as set out above. *See*, supra, Section IV.A.1. Because these regulations impose *mandatory* constraints on agency action, and because SEVIS registration is necessary for a student to remain enrolled as an international student and/or continue any OPT employment, Plaintiff has a constitutionally protected property interest in their SEVIS registrations. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

Defendants terminated Plaintiff's SEVIS record based on improper grounds, as no grounds exist that permit such termination, and moreover such termination was without prior notice, such that Plaintiff was provided with no opportunity to respond. *Fuentes*, 407 U.S. at 80 ("For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'") (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1864); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The need for that opportunity to respond, and the resulting prejudice from the absence of that opportunity, is clear here. Plaintiff would have a valid basis on which to dispute any alleged violation of their status set forth by Defendants if

such a forum existed in which to do so—they could provide the evidence that their minor

conviction has already been presented to the government officials who have repeatedly approved

them for immigration benefits, and that the conviction was so minor that it is nowhere close to

the kind of offense that constitutes a violation of their status under the relevant existing law.

Defendants' failure to provide notice to Plaintiff of the facts that formed the basis for the SEVIS

termination was therefore a violation of due process under the Fifth Amendment

      Thus, Plaintiff has established that they are likely to succeed on the merits of their claims.

## 2. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief

      Plaintiff will suffer irreparable harm were a temporary restraining order not issued, their

arrest by Defendants not prohibited, and the legal effect of the termination of their SEVIS status

not temporarily enjoined for the duration of this litigation. Plaintiff is currently at risk of further

unlawful enforcement action by Defendants—including arrest and detention—which would

likely lead to them being transferred to another jurisdiction far away from their U.S. citizen

spouse, and deportation.

      As described above, other students and post graduate workers who have had their F-1

visa revoked and/or SEVIS status terminated have been arrested and detained, sometimes before

even learning their visa had been revoked at all. On information and belief, there is a policy and

practice of transferring these individuals far from their homes, school, and communities, by

physically moving them to detention centers in Texas and Louisiana once detained. For example,

there have been several high-profile cases of immigration arrests in New York, Washington

D.C., and Boston, in which the government quickly moved the detainees across state lines to

detention facilities in Louisiana and Texas.[18] On information and belief, there are several

---

[18] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y.
Times (Mar. 15, 2025), *available at*
https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html
(Mahmoud Khalil, arrested in New York and transferred to Louisiana); *What we know about the
Tufts University PhD student detained by federal agents*, CNN (Mar. 28, 2025),
https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html
(Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh
Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit
says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-

additional cases of students who have been arrested since their visas were revoked who were initially detained near where they lived, then moved to the South the day before or day of their bond hearing in immigration court.

Plaintiff's fear and concern of similar actions against them is not hypothetical, as Plaintiff is aware that other noncitizens in the identical legal situation as Plaintiff are now starting to receive communication from the government informing them directly that, if they are in the United States without status, they could be detained, and even removed to a third country.[19] Such statements are a clear reference to the well-publicized examples of other international students who have been so detained and are clearly intended to be a warning that similar actions could take place against Plaintiff themself.

Over the past two weeks, visa revocations and SEVIS terminations have shaken campuses across the country and California.[20] The targeted SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students who are justifiably frightened about being arrested and shipped to an immigration jail far away from their communities.

Apart from fearing the very real possibility of further unlawful enforcement action, since receiving the notice of their SEVIS terminations, Plaintiff has been experiencing high levels of stress and anxiety. They are unsure of what will happen to them, and they fear the possibility of several consequences, including the lack of ability to continue their OPT employment connected

---

deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas).

[19] *See supra* note 5.

[20] *See* Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students,* Associated Press, April 4, 2025, https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Kaleem, Jaweed, *Trump administration cancels dozens of international student visas at University of California, Stanford*, Los Angeles Times, April 5, 2025, https://www.latimes.com/california/story/2025-04-05/trump-administration-cancels-international-student-visas-university-of-california-stanford.

with their education, the lack of ability to change status to another visa status (such as H-1B relating to employment in professional capacity) based on employment obtained after graduation from school (as an individual must still be in a valid visa status to change status), detention and incarceration by ICE far away from their U.S. citizen spouse who has significant health issues and is the primary caretaker for their ailing family members, or ultimately deportation or otherwise the obligation to leave the country without any ability to return to their employment, career or community.

Interruption of Plaintiff's specialized post-graduate employment, after years of hard work and investment of time and resources, which is the next step to a successful career based on their education in the United States, would be an irreparable injury to Plaintiff and their employer. Being unable to move on to the next step in their education or career, such as a work-related visa, would be an irreparable injury—because the absence of the ability to continue in valid status would mean having to depart the country. In this case, the circumstances of such departure strongly indicate the absence of any ability to return. If allowed to stand, any other future visa application would likely be denied under whatever justification the government currently believes requires the revocation of their current status. Therefore, if Plaintiff's F-1 status is allowed to be terminated, they will be prevented from changing status to their H-1B on June 28, 2025.

Thus, a temporary restraining order is necessary to prevent Plaintiff from suffering irreparable harm by being subjected to further unlawful enforcement action stemming from the unlawful termination of their SEVIS records.

### 3. The Balance of Equities and the Public Interest Favor Granting the Temporary Restraining Order

The balance of equities and the public interest undoubtedly favor granting this temporary restraining order.

First, the balance of hardships strongly favors Plaintiff. The government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed

in any legally cognizable sense by being enjoined from constitutional violations."). Plaintiff is a software engineer, who is married to a U.S. citizen with significant health issues, and who has maintained their student status through authorized post-graduate employment, which has been the status quo for multiple years. Plaintiff's single minor misdemeanor criminal conviction occurred over a year and a half ago, and DHS has known about the conviction for a long time. In fact, after Plaintiff informed DHS of their criminal conviction, DHS proceeded to twice grant immigration benefits applications for Plaintiff. As such, there is no evidence of any sudden change in underlying facts, or imminent harm to the government or public interest in Plaintiff continuing their work for the brief period of time that the instant litigation will take to determine whether they lawfully can continue to do so. Therefore, Defendants cannot allege harm arising from a temporary restraining order or a preliminary injunction ordering it to comply with the APA and the Constitution.

Further, any purported burden imposed by requiring Defendants to refrain from taking further unlawful enforcement action against Plaintiff is, at most, *de minimis* and clearly outweighed by the substantial harm Plaintiff will suffer as long as they continue to be subjected to the very real possibility of further unlawful enforcement action, including arrest and incarceration at an immigration jail far away from their U.S. citizen spouse. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required."); *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) ("noting irreparable harms imposed on anyone subject to immigration detention" including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention[.]" ).

Finally, a temporary restraining order is in the public interest. First and most importantly, "it would not be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). If a temporary restraining order is not entered, the

government would effectively be granted permission to take unlawful and unconstitutional enforcement action against Plaintiff based on their unlawful SEVIS termination. "The public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Hernandez*, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention. . ."); *cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Therefore, the public interest overwhelmingly favors entering a temporary restraining order and preliminary injunction.

### 4. Plaintiff Has Complied With the Requirements of Rule 65

Finally, as set forth *supra*, Plaintiff asks this Court to find that they have complied with the requirements of Rule 65 for the purposes of granting a temporary restraining order. Pursuant to Rule 65(b)(1), this Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if a) specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss or damage will result to the plaintiff before the adverse party can be heard in opposition; and 2) the plaintiff's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Here, Plaintiff respectfully submits that sufficient notice has actually been given to Defendants because undersigned Counsel emailed the U.S. Attorney's Office regarding this motion on today's date at 8:04 a.m. *See* Sinodis Decl. The U.S. Attorney's Office represents Defendants in civil litigation in which they are named as defendants. On April 14, 2024, the U.S. Attorney's Office also received copies of Plaintiff's complaint and all other pleadings in this matter. The Court should therefore find that the requirements of Rule 65(b)(1)(A) and (B) have been met.

Rule 65(c) also states that the Court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to

pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Under the particular circumstances of this case, however, Plaintiff respectfully asks this Court to find that such a requirement is unnecessary, because an order requiring Defendants to refrain from arresting, detaining, or transferring Plaintiff, and/or to refrain from giving Defendant's unlawful actions legal effect, should not result in any conceivable financial damages to Defendants.

## V.    **CONCLUSION**

For all the above reasons, this Court should find that Plaintiff warrants a temporary restraining order and a preliminary injunction preserving the status quo *before* the SEVIS termination on March 28, 2025. Plaintiff specifically asks this Court to enter the following findings and orders:

1. That prohibitive injunctive relief, through the issuance of a temporary restraining order, is necessary to prevent Defendants from arresting and incarcerating Plaintiff pending the resolution of these proceedings. 5 U.S.C. § 705;

2. That prohibitive injunctive relief, through the issuance of a temporary restraining order, is necessary to prevent Defendants from transferring Plaintiff outside the jurisdiction of this District pending the resolution of these proceedings. 5 U.S.C. § 705;

3. That prohibitive injunctive relief, through the issuance of a temporary restraining order, is necessary to preserve the status quo of Plaintiff's valid student status that authorizes them to continue pursuing post graduate employment under their STEM OPT, which includes the ability to seek the concomitant benefits of that valid status, such as the legal ability to change status to another nonimmigrant status, while this litigation remains pending. 5 U.S.C. § 705; § 706(2)(A), (C)-(D). This means that Plaintiff is not:

    a. Prevented from continuing their existing employment authorization under STEM OPT in valid F-1 visa status, 5 U.S.C. § 705; § 706(2)(A), (C)-(D);

    b. Prevented, based on an alleged lack of valid nonimmigrant visa status, Plaintiff from changing status to an H-1B work visa, 5 U.S.C. § 705; § 706(2)(A), (C)-(D); and

    c.  Determined to be accruing unlawful presence in the United States as a result of the SEVIS termination, 5 U.S.C. § 705; § 706(2)(A), (C)-(D).

4. That, under the circumstances of this case, it is proper to waive the requirement that Plaintiff give an amount of security in connection with the issuance of an injunctive order.

Therefore, as set forth in the attached proposed order, Plaintiff requests that the Court issue the following orders:

1. Defendants are enjoined from arresting and incarcerating Plaintiff pending the resolution of these proceedings. 5 U.S.C. § 705;

2. Defendants are enjoined from transferring Plaintiff outside the jurisdiction of this District pending the resolution of these proceedings. 5 U.S.C. § 705; and

3. Any legal effect that the unlawful termination of Plaintiff's SEVIS status or the potential unlawful revocation of their F-1 visas may have is enjoined pending further order of the Court, 5 U.S.C. § 705; § 706(2)(A), (C)-(D), including:

    a.  Preventing Plaintiff from continuing their existing employment authorization under STEM OPT in valid F-1 visa status, 5 U.S.C. § 705; § 706(2)(A), (C)-(D);

    b.  Preventing, based on an alleged lack of valid nonimmigrant visa status, Plaintiff from changing status to an H-1B work visa, 5 U.S.C. § 705; § 706(2)(A), (C)-(D); and

    c.  Determining that Plaintiff is accruing unlawful presence in the United States as a result of the SEVIS termination, 5 U.S.C. § 705; § 706(2)(A), (C)-(D).

4. Accordingly, pending these proceedings, Plaintiff is permitted to continue pursuing their employment under their STEM OPT and can also change status from F-1 to an H-1b work visa.

5. Under the circumstances of this case, it is proper to waive the requirement that Plaintiff give an amount of security.

Finally, to prevent any retaliatory arrest, the Court should also issue an order requiring

the parties to redact or file any information identifying Plaintiff under seal, and an order limiting

the sharing by Defendants' counsel of any information about Plaintiff's identity or related

personal information beyond what is reasonably necessary for the litigation (including to comply

with Court orders) and to prohibit use of the information for any purpose outside of the litigation.

Dated: April 16, 2025                    Respectfully submitted,

                                         /s/ Johnny Sinodis
                                         Marc Van Der Hout
                                         Johnny Sinodis
                                         Attorneys for Plaintiff