PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
ELIZABETH D. KURLAN (CABN 255869)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: 415-436-7200
      Facsimile: 415-436-6748
      elizabeth.kurlan@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>      Defendants. | Case No. 4:25-cv-03140-JSW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date:  April 25, 2025<br>Time:  9:00 a.m.<br>Location:  Courtroom 5, 2nd Floor<br><br>The Honorable Jeffrey S. White |

1

**TABLE OF CONTENTS**

2   I.     INTRODUCTION ...................................................................................................1

3   II.    BACKGROUND ....................................................................................................2

4          A.     The F-1 Nonimmigrant Student Status ....................................................2

5          B.     SEVIS Records .........................................................................................4

6          C.     Plaintiff Doe .............................................................................................5

7   III.   LEGAL STANDARD ...........................................................................................6

8   IV.    ARGUMENT ........................................................................................................7

9          A.     Plaintiff's Requested Relief for a Judgment on the Merits is Inappropriate......................7

10         B.     Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits. ...................9

11                1.     Plaintiff's APA claims fail because there is no final agency action and
12                       the agency's action was not arbitrary and capricious. ...............................9

                  2.     Plaintiff's Due Process claims fail because he does not have a property
13                       interest in a SEVIS record..........................................................11

14         C.     Plaintiff Cannot Establish a Likelihood of Immediate Irreparable Harm..........................12

15         D.     The Balance of Harms and the Public Interest Weighs Against Relief. ...........................15

16         E.     If Injunctive Relief Is Ordered the Court Should Require Plaintiff to Post An
                  Appropriate Bond..............................................................................16

17  V.     CONCLUSION....................................................................................................16

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Air Sunshine, Inc. v. Carl*,
663 F.3d 27 (1st Cir. 2011) ............................................................................................ 11

*Anderson v. United States*,
612 F.2d 1112 (9th Cir. 1980) ......................................................................................... 7

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ......................................................................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 13

*Barahona-Gomez v. Reno*,
236 F.3d 1115 (9th Cir. 2001) ....................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 13, 14

*Bennett v. Spear*,
520 U.S. 154 (1997) .......................................................................................................... 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................................................................ 13

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ........................................................................................... 6

*Earth Island Inst. v. Carlton*,
626 F.3d 462 (9th Cir. 2010) ........................................................................................... 6

*Fan v. Brewer*,
No. 08-cv-3524, 2009 WL 1743824 (S.D. Tex. June 17, 2009) ...................................... 12

*Garcia v. Google*, Inc.,
786 F.3d 733 (9th Cir. 2015) ........................................................................................ 6, 7

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ....................................................................................... 13

*Holistic Candlers and Consumer's Ass'n v. FDA*,
664 F.3d 940 (D.C. Cir. 2012) ......................................................................................... 9

*Info. Ctr. v. U.S. Dep't of Just.*,
15 F. Supp. 3d 32 (D.D.C. 2014) ................................................................................... 12

*Jie Fang v. Director U.S. Immigration & Customs Enforcement*,
  935 F.3d 172 (3d Cir. 2019) ............................................................................................ 10

*Jimenez-Angeles v. Ashcroft*,
  291 F.3d 594 (9th Cir. 2002) ........................................................................................... 14

*Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*,
  286 F.3d 382 (6th Cir. 2002) ........................................................................................... 10

*Lackey v. Stinnie*,
  145 S. Ct. 659 (2025) ......................................................................................................... 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................................ 9

*Mayorga v. Meade*,
  No. 24-cv-22131, 2024 WL 4298815 (S.D. Fla. Sept. 26, 2024) ................................. 14

*Mendez v. U.S. Immigration & Customs Enforcement*,
  No. 23-cv-829-TLT, 2023 WL 2604585 (N.D. Cal. Mar. 15, 2023) .............................. 7

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) ........................................................................................................ 15

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................................... 15

*Penalbert-Rosa v. Fortuno-Burset*,
  631 F.3d 592 (1st Cir. 2011) ............................................................................................ 14

*Pom Wonderful LLC v. Pur Beverages LLC*,
  No. 13-cv-6917, 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015) ...................................... 13

*Power Mobility Coal. v. Leavitt*,
  404 F. Supp. 2d 190 (D.D.C. 2005) .................................................................................. 12

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ........................................................................................................... 14

*S.M. v. Del. Dep't of Educ.*,
  77 F. Supp. 3d 414 (D. Del. 2015) .................................................................................... 11

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984) ........................................................................................ 6, 7

*Silva v. Gonzales*,
  463 F.3d 68 (1st Cir. 2006) ................................................................................................ 2

*Spadone v. McHugh*,
   842 F. Supp. 295 (D.D.C. 2012) ................................................................................. 12

*Stanley v. Univ. of S. California*,
   13 F.3d 1313 (9th Cir. 1994) ..................................................................................... 7

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ..................................................................................... 6

*Textron Inc. v. Comm'r of Internal Revenue*,
   336 F.3d 26 (1st Cir. 2003) ...................................................................................... 11

*U.S. Dep't of Homeland Sec.*,
   No. 22-cv-9654, 2020 WL 6826200 n.3 (C.D. Cal. Nov. 20, 2020) ........................ 12

*U.S. Philips Corp. v. KBC Bank N.V.*,
   590 F.3d 1091 (9th Cir. 2010) ................................................................................... 6

*Wallace v. Secretary. U.S. Dep't of Homeland Sec.*,
   616 Fed. App'x 958 (11th Cir. 2015) ....................................................................... 15

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ................................................................................................. 15

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ....................................................................................................... 6

*Wis. Gas Co v. F.E.R.C.*,
   758 F.2d 669 (D.C. Cir. 1995) ................................................................................. 12

*Yerrapareddypeddireddy v. Albence*,
   No. 20-cv-1476, 2021 WL 5324894 (D. Ariz. Nov. 16, 2021) ............................... 10

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*,
   2018 WL 5018487 (W.D. Va. Oct. 16, 2018) ................................................. 9, 11, 12

**Statutes**

5 U.S.C. § 706 ................................................................................................................ 9, 10

8 U.S.C. § 1103(a) ............................................................................................................. 15

8 U.S.C. § 1184(a)(1) .......................................................................................................... 4

8 U.S.C. § 1201(i) .......................................................................................................... 4, 11

8 U.S.C. § 1226 ................................................................................................................. 14

8 U.S.C. § 1227(a)(1)(B) ..................................................................................................... 4

8 U.S.C. § 1252(g) ................................................................................................................ 14

8 U.S.C. § 1372 ............................................................................................................... passim

**Rules**

Fed. R. Civ. P. 65(c) ............................................................................................................ 16

**Regulations**

8 C.F.R. § 214 ................................................................................................................ passim

8 C.F.R. § 239.3 ......................................................................................................... 3, 8, 13

22 C.F.R. § 41.122 ................................................................................................................ 4

## I.    INTRODUCTION

Plaintiff is a post-graduate international student who is in the United States in F-1 nonimmigrant student status. Plaintiff seeks a temporary restraining order ("TRO") compelling the United States Department of Homeland Security ("DHS") to change his record back to "active" in a database known as the Student Exchange Visitor Information System ("SEVIS"). The Court should deny this request because it is procedurally and substantively improper. Congress mandated that DHS, through the United States Immigration and Customs Enforcement ("ICE") and the Student Exchange Visitor Program ("SEVP"), "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to foreign nationals seeking F-1 student status. *See* 8 U.S.C. § 1372. Under this authority, DHS (ICE and SEVP) established SEVIS. Consistent with its law enforcement mission as it relates to foreign students, SEVP changed Plaintiff's record in the SEVIS database from "active" to "terminated." SEVP's ministerial action did not delete Plaintiff from the database or terminate his F-1 nonimmigrant student status. Moreover, at this time, ICE has not charged Plaintiff as being deportable.

Plaintiff is unlikely to succeed on the merits of his claim. An emergency motion for a temporary restraining order may only be used to maintain the status quo; it cannot be used to obtain the ultimate relief Plaintiff seeks in this case, which is the alteration of his SEVIS record. In addition, the premise of Plaintiff's claim is incorrect—SEVIS does not control or necessarily even reflect whether a student has lawful nonimmigrant status. Plaintiff erroneously conflates his SEVIS record change to reflect "terminated" with his immigration status, which is his legal classification in the United States; these are two different concepts and, as stated above, Plaintiff's F-1 status remains unchanged. Thus, Plaintiff cannot rely on the regulations relating to termination of F-1 *status*, *e.g.*, 8 C.F.R. 214.1(d), since DHS's action did not change his F-1 status.[1] Plaintiff demands that this Court overlook its jurisdictional limits, grant him extraordinary relief, and modify the record of a foreign national. The Court should decline Plaintiff's demand.

---

[1] Plaintiff makes no allegation that the United States Department of State, who is not a defendant in this action, has revoked his visa and Plaintiff concedes that he is not challenging any decision to revoke his F-1 visa. *See* Dkt. No. 1 (Plaintiff's complaint) ¶ 9.

1    Similarly, Plaintiff has not met his burden of demonstrating a likelihood of irreparable harm or

2    that a restraining order would serve the public interest. Plaintiff's alleged harms are monetary and thus

3    reparable at law, and his alleged harms are speculative. Moreover, the balance of harms and the public

4    interest weigh in favor of the Executive's sovereign prerogative to enforce the immigration laws of the

5    United States. As a district court recently held in a case presenting similar claims, "the balance of factors

6    favors denying the motion [for TRO]" where [i]t is not currently clear that Plaintiffs have lost F-1 status

7    or that the SEVIS terminations carry independent consequences." *Deore v. Secretary of the U.S. Dep't*

8    *of Homeland Security*, No. 25-cv-11038, slip op., at *16 (E.D. Mich. Apr. 17, 2025) (ECF No. 20); *see*

9    *also Liu v. Noem*, No. 25-cv-716, slip op., at *1 (S.D. Ind. Apr. 17, 2025) (ECF No. 24) (denying motion

10   for TRO because plaintiffs had not established that they would suffer irreparable harm when plaintiffs

11   were not in removal proceedings). Plaintiff does not meet the standards for a TRO, let alone the higher

12   standard he would need to meet for the mandatory injunction he seeks to alter the status quo.

13   Accordingly, the Court should deny Plaintiff's request for the extraordinary remedy of a TRO.

14   **II.    BACKGROUND**

15       **A.    The F-1 Nonimmigrant Student Status**

16       The Immigration and Nationality Act ("INA"), as amended, allows for the entry of a foreign

17   national who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the

18   United States temporarily and solely for the purpose of pursuing such a course of study. . . at an

19   established college, university, seminary, conservatory, academic high school, elementary school, or

20   other academic institution or in an accredited language training program in the United States." 8 U.S.C.

21   § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). As relevant here, to be admitted in F-1 status, an

22   applicant must present a Form I-20, issued by a certified school in the student's name; present

23   documentary evidence of financial support; and demonstrate he or she intends to attend the school

24   specified on the student's visa. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a nonimmigrant student

25   must "pursue a full course of study" or "engage in authorized practical training." *Id.* § 214.2(f)(5)(i).

26       Individuals admitted in F-1 status are permitted to remain in the United States for the duration of

27   status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time

28   during which an F-1 student is pursuing a full course of study at an educational institution certified by

1   SEVP for attendance by foreign students, or engaging in authorized practical training following

2   completion of studies." 8 C.F.R. § 214.2(f)(5).

3        "Optional Practical Training" or "OPT" allows eligible students to obtain temporary employment

4   that is directly related to the student's major area of study. 8 C.F.R. § 214.2(f)(10)(ii). OPT must be

5   "directly related to [a student's] major area of study" in order to qualify as authorized training. 8 C.F.R.

6   § 214.2(f)(10). OPT can occur while a foreign national is in school, during breaks, or after a student has

7   completed his or her course of study. 8 C.F.R. § 214.2(f)(10)(ii)(A)(1)–(3). While in school, a foreign

8   national's status is based on that student pursuing a degree and need not be routinely renewed. 8 C.F.R.

9   § 214.2(f)(7). Foreign nationals in an F-1 status who received a science, technology, engineering, or

10  mathematics ("STEM") degree may extend participation in the OPT program for up to an additional two

11  years following the conferral of their degree. 8 C.F.R. § 214.2(f)(10)(ii)(C). For post-degree completion

12  OPT, there are limits on how long an individual can be unemployed. In particular, a foreign national in

13  an F-1 status generally may not accrue more than ninety days of unemployment; if granted a twenty-

14  four-month STEM OPT extension, he may not accrue more than a total of 150 days of unemployment. 8

15  C.F.R. § 214.2(f)(10)(ii)(E). Periods of unemployment longer than those authorized by regulation may

16  be considered a failure to maintain status. *Id.*

17       An F-1 student admitted for the duration of status who is found to have violated his status (by,

18  for example, dropping out of school) will not be considered to be unlawfully present in the United States

19  until either (1) the day after a request for another immigration benefit is denied by U.S. Citizenship and

20  Immigration Services ("USCIS"); or (2) during removal proceedings, the day after an Immigration

21  Judge enters an order that the foreign national violated his nonimmigrant status. *See* USCIS

22  Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes

23  of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at:

24  https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited

25  Apr. 18, 2025); *see also* 8 C.F.R. § 239.3.

26       An international student may violate the terms of his or her F-1 nonimmigrant status in several

27  ways. First, if the international student violates any of the terms in the regulations governing

28  nonimmigrant students, he may lose his F-1 status. *See* 8 C.F.R. § 214.1(d) (addressing termination of F-

1 status); 8 C.F.R. § 214.2(f) (describing the requirements of maintaining nonimmigrant student status); *see also* 8 U.S.C. § 1184(a)(1). For instance, if an "F-1 student [] is unable to complete the educational program within the time listed on Form I–20" he is "considered out of status." 8 C.F.R. § 214.2(f)(7). And, if a nonimmigrant student fails to comply with the other regulations at 8 C.F.R. § 214.2(f), he or she may become inadmissible and "will depart from the United States." 8 U.S.C. § 1184(a)(1). If a student loses nonimmigrant student status, the student or the school may seek reinstatement. *See* 8 C.F.R. § 214.2(f)(16).

Second, an "immediate" visa revocation may result in a student falling out of F-1 status. The United States Department of State may revoke an F-1 visa "at any time, in [the Secretary of State's] discretion." 8 U.S.C. § 1201(i); 22 C.F.R. § 41.122(a). A revocation may be immediate, prudential, or provisional. *See* 22 C.F.R. §§ 41.122(b), 42.82. If the Department of State immediately revokes a visa, the individual is removable under 8 U.S.C. § 1227(a)(1)(B). In contrast, a prudential revocation, or revocation upon departure, does not have a corresponding ground of removability. *See* 9 Foreign Affairs Manual ("FAM") 403.11-5(B), (U) (Prudential Revocations). Meanwhile, a "provisional revocation is subject to reversal through internal procedures established by the Department of State." 22 C.F.R. § 41.122(b).

A student who falls out of F-1 status in one of these two ways—through violation of its terms or through an immediate visa revocation—will be removable. However, as long as the student remains in F-1 status, including following a prudential revocation of a visa, the student is not removable.

## B.    SEVIS Records

To enhance the integrity of the immigration system in the wake of the September 11, 2001, terrorist attacks, Congress mandated that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). Under this authority, DHS created SEVIS, "which is a web-based system" that DHS, through SEVP, "uses to

maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." *See ICE, Student and Exchange Visitor Information System*, found online at: https://www.ice.gov/sevis/overview (last visited Apr. 18, 2025). Under 8 U.S.C. § 1372, Congress has provided DHS, through SEVP, with broad authority to administer SEVIS. Inherent in that authority is SEVP's ability to maintain, update and change SEVIS records as needed (*e.g.*, from "active to "terminated") to carry out the purposes of the program. *See* Declaration of Andre Watson ("Watson Decl."), ¶¶ 3, 4. Notably, SEVP's termination of a foreign national's record in SEVIS does not terminate that person's nonimmigrant status in the United States. Watson Decl. ¶ 10. Moreover, the statute does not provide SEVP the authority to terminate a foreign national's nonimmigrant status by terminating his SEVIS record. *Id.*

DHS updates SEVIS to reflect the status of international students within the Student and Visitor Exchange Program. 8 U.S.C. § 1372; Watson Decl. ¶¶ 3–4. In addition, school officials are required to update SEVIS with information about students in the program. *See* 8 C.F.R. § 214.3(g)(1).

### C.    Plaintiff Doe

Plaintiff is a national of Iran, who was last admitted to the United States as an F-1 nonimmigrant visa holder. Watson Decl. ¶ 7. Plaintiff is employed pursuant to a post-graduate STEM OPT-based employment authorization. Dkt. No. 1 ¶ 1. DHS's Counter Threat Lead Development Unit ("CTLD") ran Plaintiff's information against criminal databases, and it was a verified match to a criminal history record for a charge of solicitation on September 11, 2023. Waston Decl. ¶ 7. At that time, the disposition of the charge was unknown. *Id.* On March 28, 2025, CTLD received communications from the Department of State indicating that Plaintiff's visa was not valid. *Id.* ¶ 8. On March 28, 2025, SEVP amended Plaintiff's SEVIS record by setting the record designation to "terminated." *Id.* ¶ 9.

On April 7, 2025, Plaintiff filed a complaint in which he brings five claims for relief. Dkt. No. 1. Plaintiff alleges that Defendants' termination of his record in the SEVIS system is a final agency action that violates the Administrative Procedure Act ("APA"), and that Defendants violated the Due Process Clause of the Fifth Amendment by terminating his F-1 student status under the SEVIS system without individualized notice and an opportunity to respond. Dkt. No. 1 ¶¶ 44–60. Plaintiff requests a Court

1    order compelling DHS to restore his "SEVIS record and status." Dkt. No. 1 at 12.

2        On April 16, 2025, Plaintiff filed a motion for TRO. Dkt. No. 9 (Plaintiff's Motion for TRO). In

3    the emergency motion, Plaintiff seeks the same relief as requested in his complaint as well as an order

4    prohibiting DHS from "arresting and incarcerating" or "transferring" Plaintiff outside the jurisdiction of

5    this District.[2] Dkt. No. 9 at 20. On April 17, 2025, the Court granted the TRO *ex parte*, enjoining

6    Defendants for fourteen days from arresting, incarcerating, or transferring Plaintiff "pending the

7    resolution of these proceedings." Dkt. No. 16.

8    **III.    LEGAL STANDARD**

9        The standard for issuing a temporary restraining order and issuing a preliminary injunction are

10   substantially identical. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

11   (9th Cir. 2001). Either is an "extraordinary remedy" that the Court should award only upon a clear

12   showing that the party is entitled to such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

13   (2008). Preliminary injunctions are "never awarded as of right." *Winter*, 555 U.S. at 24.

14       A plaintiff seeking preliminary injunctive relief must establish that: (1) they are likely to succeed

15   on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the

16   balance of equities tips in their favor; and (4) an injunction is in the public interest." *Garcia v. Google*,

17   Inc., 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20). Alternatively, plaintiff can show

18   that there are "'serious questions going to the merits' and the 'balance of hardships tips sharply towards'

19   [plaintiff], as long as the second and third *Winter* factors are [also] satisfied." *Disney Enters., Inc. v.*

20   *VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). "[P]laintiffs seeking a preliminary injunction face a

21   difficult task in proving that they are entitled to this extraordinary remedy." *Earth Island Inst. v.*

22   *Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). Plaintiff's burden is aptly described as a "heavy" one. *Earth*

23   *Island Inst.*, 626 F.3d at 469.

24       The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties

25   until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094

26   (9th Cir. 2010). A preliminary injunction may not be used to obtain "a preliminary adjudication on the

27

28       [2] Although Plaintiff's counsel requested for Defendants to agree to refrain from arresting
     Plaintiff, Defendants could not agree such a request without knowing Plaintiff's identity.

1    merits," but only to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix*

2    *Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

3        Accordingly, where a plaintiff seeks mandatory injunctive relief—seeking to alter the status

4    quo—"courts should be extremely cautious." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th

5    Cir. 1994). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite*

6    and is particularly disfavored." *Stanley*, 13 F.3d at 1320 (internal quotations and alteration omitted). A

7    mandatory injunction "should not be issued unless the facts and law clearly favor the moving party."

8    *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Mandatory injunctions "are not granted

9    unless extreme or very serious damage will result and are not issued in doubtful cases[.]" *Anderson*, 612

10   F.2d at 1115. A party seeking a mandatory injunction "must establish that the law and facts *clearly favor*

11   her position, not simply that she is likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in original).

12   **IV.    ARGUMENT**

13       **A.    Plaintiff's Requested Relief for a Judgment on the Merits is Inappropriate.**

14       The Court should deny Plaintiff's emergency motion because it seeks inappropriate relief at this

15   stage of the proceeding and because Plaintiff cannot demonstrate his entitlement to the extraordinary

16   remedy of a temporary restraining order or preliminary injunction. The purpose of a TRO under Rule 65

17   is to preserve the status quo. *See Sierra On-Line, Inc*, 739 F.2d at 1422; *see also Lackey v. Stinnie*, 145

18   S. Ct. 659, 667 (2025) ("The purpose of a preliminary injunction is merely to preserve the relative

19   positions of the parties until a trial on the merits can be held and to balance the equities as the litigation

20   moves forward.") (quotation and citation omitted). As a matter of law, Plaintiff is not entitled to what

21   amounts to a judgment on the merits at this preliminary stage. *See Mendez v. U.S. Immigration &*

22   *Customs Enforcement*, No. 23-cv-829-TLT, 2023 WL 2604585, at *3 (N.D. Cal. Mar. 15, 2023) (noting

23   that "judgment on the merits in the guise of preliminary relief is a highly inappropriate relief.")

24   (quotation omitted).

25       Here, Plaintiff seeks relief that is inappropriate on a motion for TRO. With respect to Plaintiff's

26   request that the Court order DHS to reinstate his SEVIS record, Plaintiff does not seek to maintain the

27   status quo but instead seeks to alter it. Before Plaintiff filed this suit, DHS had updated the SEVIS

28   system to note on Plaintiff's SEVIS record "terminated." Watson Decl. ¶ 9. The ultimate relief Plaintiff

1   seeks is the reinstatement of his SEVIS record to "active." *See* Dkt. No. 1 at 12. Accordingly, the status

2   quo is that Plaintiff's SEVIS record has been terminated, and Plaintiff's request for an emergency order

3   changing that status is inappropriate.

4           While Plaintiff asserts a challenge to SEVP's change to his SEVIS record, he also improperly

5   requests relief relating to his F-1 nonimmigrant status. *See* Dkt. No. 1 at 12. Plaintiff's SEVIS record is

6   not the same thing as his F-1 nonimmigrant status. *See Deore*, No. 25-cv-11038, slip op., at *6 (noting

7   that, "according to Watson's declaration, a clerical change in SEVIS does not create a termination of F-1

8   status"). As explained in the Watson declaration, changing a data entry field in a SEVIS record to

9   "terminated" (as opposed to initial, active, inactive, or completed) neither deletes the SEVIS record nor

10  terminates the foreign national's F-1 nonimmigrant status. Watson Decl. ¶ 10. SEVIS is a database to

11  monitor and verify certain information about F, M, and J nonimmigrants administered by SEVP. *Id.* ¶ 4.

12  As ICE confirmed in a 2018 letter in response to a Congressional inquiry:

13              SEVIS records serve as an indicator of a possible immigration status
            violation. SEVIS record terminations and cancellations *are data entry*
14              *actions* in SEVIS that *raise a flag indicating that an individual's status*
            *requires further investigation by the agency*. An individual's SEVIS record
15              can be terminated for a number of reasons, not all of which are negative.

16  Ex. A (ICE letter responding to questions from Senator Chuck Grassley dated June 1, 2018) at 9

17  (emphasis added).

18          The applicable statute, 8 U.S.C. § 1372, does not provide SEVP with the authority to terminate

19  nonimmigrant status by changing a SEVIS record. Watson Decl. ¶ 10. Indeed, F-1 nonimmigrant status

20  is held for duration of status (or "D/S") and can only be determined by an immigration judge or USCIS

21  to have ended in very specific set of circumstances. *See supra* Part II.A; USCIS Memorandum on May

22  6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section

23  212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at:

24  https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited

25  Apr. 18, 2025); 8 C.F.R. § 239.3. Here, SEVP has not claimed that it terminated Plaintiff's

26  nonimmigrant status. Watson Decl. ¶ 10.

27          Moreover, as Plaintiff concedes, the Department of State's prudential revocation of a visa alone

28  does not automatically revoke F-1 status. *See* Dkt. No. 7 at 10; *see also Deore*, No. 25-cv-11038, slip

op., at *7 (noting that prudential visa revocation "does not automatically revoke "F-1 status"). This is because a visa, which is a travel document that allows an individual to enter the United States, is not the same as immigration status, which is an individual's legal classification in the United States. Therefore, Plaintiff has not presented a valid case or controversy before the Court regarding his nonimmigrant status. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 (1992).

### B.    Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits.

#### 1.    Plaintiff's APA claims fail because there is no final agency action and the agency's action was not arbitrary and capricious.

Plaintiff fails to assert a viable claim under the APA because SEVP's change to Plaintiff's SEVIS record is not a final agency action. A final agency action is required for APA review. 5 U.S.C. § 706. An action is "final" when it (1) "mark[s] the consummation of the agency's decision-making process," and (2) is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). A challenged action fails the first prong if it is "of a merely tentative or interlocutory nature" and does not express an agency's "unequivocal position." *Holistic Candlers and Consumer's Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (citations omitted). A non-final action contemplates further administrative consideration or modification prior to the agency's adjudication of rights or imposition of obligations. *See id.* at 945.

SEVP's change to Plaintiff's SEVIS record fails to meet both factors of the final agency action test. First, the change does not mark the consummation of any decision-making process. SEVIS records are "an electronic means to monitor and verify" certain information about a student nonimmigrant. *See* Watson Decl. ¶ 4; 8 U.S.C. § 1372(c). And changing a SEVIS record to "terminated" does not terminate a foreign national's nonimmigrant status in the United States. Watson Decl. ¶ 11. Thus, the SEVIS record—indicating initial, active, inactive, completed or terminated—does not reflect the consummation of any agency decision-making process regarding a student's nonimmigrant status. *See* Ex. A.

Second, legal consequences do not flow from the mere changing of a SEVIS record to terminated. As indicated, it does not terminate the student's nonimmigrant status or result in the revocation of a nonimmigrant visa. Watson Decl. ¶ 10. Rather, it is a record keeping action conducted under DHS's authority to collect information and maintain records under 8 U.S.C. § 1372. *See Yunsong*

*Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (describing SEVIS record modification by school's DSO as "clerical duty performed as a preliminary matter"); *see also Yerrapareddypeddireddy v. Albence*, No. 20-cv-1476, 2021 WL 5324894, at *8 (D. Ariz. Nov. 16, 2021) (same).

Plaintiff relies on *Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 182 (3d Cir. 2019), to argue that the termination of a SEVIS record is final agency action under the APA, but that case is inapposite. In *Jie Fang*, the district court dismissed the plaintiffs' APA claims after finding that DHS's revocation of their nonimmigrant status was not final under the APA and that the suit was not ripe because the students could challenge their revocation in immigration removal proceedings. 935 F.3d at 177–78. On appeal, the Third Circuit reversed on both points and remanded for further proceedings because it concluded that the regulation providing for reinstatement of F-1 nonimmigrant status (8 C.F.R. § 214.2(f)(16)) was not mandatory and that the regulatory appeal procedure was not reviewable in immigration proceedings. *Jie Fang*, 935 F.3d at 177–78. The reasoning in *Jie Fang* is inapplicable here: the issue in *Jie Fang* was not the termination of a SEVIS record; it was the termination of lawful nonimmigrant status, which led to the agency placing the students in immigration removal proceedings. *See Jie Fang*, 935 F.3d at 178–79. Thus, *Jie Fang* does not support Plaintiff's claim, and he is not challenging a final agency action.

If an action is reviewable under the APA, a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under the arbitrary or capricious standard, the party challenging the agency's action must show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th Cir. 2002) (quotations omitted).

Here, DHS's termination of Plaintiff's SEVIS record was not arbitrary or capricious. SEVIS records may be terminated for numerous reasons by DHS and by a university. *See supra* Part II.B. It is within DHS's statutory discretion to decide that Plaintiff's SEVIS record warranted the notation of "terminated." *See* 8 U.S.C. § 1372. Accordingly, Plaintiff could not succeed on his APA claim based on the evidence in the record at this stage, even if the termination of his SEVIS record was reviewable

under the APA.

Plaintiff alleges that DHS lacks the authority to change a SEVIS record under 8 C.F.R. § 214.1(d). Dkt. No. 7 at 10. Plaintiff is incorrect. Section 214.1(d) relates to the termination of a foreign national's nonimmigrant status—not his SEVIS record. *See* 8 C.F.R. § 214.1(d) ("the nonimmigrant status of an alien shall be terminated by…"). And as SEVP has indicated, it "has never claimed that it had terminated Plaintiff's nonimmigrant status." Watson Decl. ¶ 10. Congress tasked DHS with the broad authority to "develop and conduct a program" to record information about nonimmigrant students in an electronic database. 8 U.S.C. § 1372(a)(1). DHS can update, change or modify the records for that program as part of its congressionally mandated authority to "conduct" the SEVIS program. *Id.*[3]

### 2. Plaintiff's Due Process claims fail because he does not have a property interest in a SEVIS record.

Plaintiff has no likelihood of success on the merits of his due process claim because courts have held that there is no property interest in a SEVIS record. To establish a procedural due process claim under the Fifth Amendment, "a plaintiff must (1) 'identify a protected liberty or property interest,' and (2) 'allege that the defendants . . . deprived [him] of that interest without constitutionally adequate process.'" *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 34 (1st Cir. 2011) (quotation omitted). Plaintiff has not, and cannot, provide any authority to establish a constitutionally protected interest in a SEVIS record. This is because the opposite is true—courts have held that no such interest exists. *See*, *e.g.*, *Zhao*, 2018 WL 5018487, at *6 (holding that plaintiff did not have a property interest in his SEVIS record that would implicate due process).[4] Here, as in *Zhao*, Plaintiff does not have a constitutionally protected

---

[3] Moreover, Section 214.1(d) provides three mandatory scenarios in which nonimmigrant status "shall" be terminated without review. *See* 8 C.F.R. § 214.1(d). It does not, however, suggest that nonimmigrant status *cannot* be terminated for other reasons. *See id.* The plain text of the regulation controls. *Textron Inc. v. Comm'r of Internal Revenue*, 336 F.3d 26, 31 (1st Cir. 2003). Part 214.1(d) provides reasons for terminating nonimmigrant status in addition to reasons provided elsewhere in the applicable statutory provisions and regulations. *See*, *e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f).

[4] *See also S.M. v. Del. Dep't of Educ.*, 77 F. Supp. 3d 414, 419 (D. Del. 2015) (holding that there is no protected property interest for students wishing to continue attending their same school); *Fan v. Brewer*, No. 08-cv-3524, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009) (updating student's SEVIS record to reflect changed academic status did not violate any constitutional right); *Doe 1 v. U.S. Dep't of Homeland Sec.*, No. 22-cv-9654, 2020 WL 6826200, at *4 n.3 (C.D. Cal. Nov. 20, 2020), *aff'd sub nom. Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849 (9th Cir. 2021) ("Although Plaintiffs do not allege in the Complaint or Motion a property interest in their SEVIS status, it is equally unlikely that one exists.").

property interest in his SEVIS record. SEVIS is an administrative processing tool that does not affect their lawful nonimmigrant status. *See Zhao*, 2018 WL 5018487, at *4–5. Accordingly, Plaintiff fails to demonstrate a likelihood of success on the merits of his due process claim.

### C.     Plaintiff Cannot Establish a Likelihood of Immediate Irreparable Harm.

"[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is 'certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quotation omitted). In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (quotation omitted). The movant must "substantiate the claim that irreparable injury is likely to occur" and "provide proof . . . indicating that the harm is certain to occur in the near future." *Wis. Gas Co v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1995). That is because "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

Here, Plaintiff has not demonstrated a likely irreparable injury. See *Liu*, No. 25-cv-716, slip op., at *9 (concluding that "Plaintiffs have not demonstrated irreparable harm to warrant the extraordinary exercise of judicial power required" to issue a TRO based on the SEVIS record alteration). First, Plaintiff's claim of loss of current and future employment does not irreparable injury. "Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 295, 301 (D.D.C. 2012) (citations omitted). Notably, a foundational requirement for eligibility for F-1 student status is demonstration of the ability to independently cover all costs while present in the United States. *See* 8 C.F.R. § 214.2(f)(1)(i)(B).

Additionally, Plaintiff's claim relating to his future employment is speculative because a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," or on "speculation about the decisions of independent actors," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 (2013). As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting

claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015); *see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (while injunctive relief may be ordered to prevent reputational harm, a finding of reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than evidence"); *Pom Wonderful LLC v. Pur Beverages LLC*, No. 13-cv-6917, 2015 WL 10433693, at *11 (C.D. Cal. Aug. 6, 2015) (unsubstantiated statements were "not *evidence* that [plaintiff's] reputation and goodwill are likely to be harmed absent injunctive relief") (emphasis in original)).

Second, Plaintiff's claim that he will accrue unlawful status and be unable to change to H-1B status does not constitute an irreparable injury because he is still in F-1 nonimmigrant status. *See* Watson Decl. ¶ 10. It also is an incorrect statement because F-1 students admitted for the duration of status (or "D/S") begin to accrue unlawful presence only after USCIS or an Immigration Judge has taken administrative action against them. *See supra* Part II.A. USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at:
https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited Apr. 18, 2025); *see also* 8 C.F.R. § 239.3.

Finally, Plaintiff argues that he faces a risk of immediate detention or removal from the United States. However, at this time, DHS has not charged Plaintiff as being removable such that he will be placed in detention. Nor has Plaintiff pled any facts that would lead this Court to believe that Defendants imminently intend to detain him or initiate removal proceedings against him at this time, let alone without due process of law. Plaintiff's claims amount to little more than "'legal conclusion[s] couched as . . . factual allegation[s],'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and are "so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 557 n.5).

Further, this Court has no jurisdiction to review DHS's decision to commence removal proceedings. The INA divests this Court of jurisdiction over discretionary decisions concerning DHS's decision to initiate removal proceedings. 8 U.S.C. § 1252(g). Moreover, the INA explicitly bars judicial

1   review of the discretionary decision over whether or not to detain a foreign national that is placed in

2   removal proceedings. 8 U.S.C. § 1226. Therefore, this Court lacks authority to provide Plaintiff with the

3   relief he requests based on his speculative assertions.

4        At the threshold, Section 1252(g) applies to "three discrete actions that the [Secretary of

5   Homeland Security] may take: her 'decision or action' to 'commence removal proceedings, adjudicate

6   cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482

7   (1999) (emphasis in original). The Supreme Court determined that "Section 1252(g) was directed

8   against . . . attempts to impose judicial constraints upon prosecutorial discretion." *Reno*, 525 U.S. at 485

9   n.9. This includes the Executive's "discretion to abandon the endeavor" without judicial interference. *Id.*

10  at 483–84; *see also Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001). Consequently,

11  Section 1252(g) prohibits district courts from hearing challenges to decisions and actions about whether,

12  when, and where to commence removal proceedings. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594,

13  598–99 (9th Cir. 2002). Accordingly, any request by Plaintiff that the Court prohibit Defendants from

14  initiating removal proceedings against him fails because it impedes upon the Secretary of Homeland

15  Security's discretion to commence removal proceedings.

16       Moreover, 8 U.S.C. § 1226(e) provides that that: "[t]he [Secretary of Homeland Security's]

17  discretionary judgment regarding the application of this section shall not be subject to review. No court

18  may set aside any action or decision by the [Secretary] under this section regarding the detention of any

19  alien or the revocation or denial of bond or parole." *See*, *e.g.*, *Mayorga v. Meade*, No. 24-cv-22131,

20  2024 WL 4298815, at *7 (S.D. Fla. Sept. 26, 2024). Similarly, Section 1252(g) independently bars

21  relief. If Defendants decide at some point to charge Plaintiff as deportable and thereafter detain him,

22  such an action would arise "from the decision [and] action" to "commence proceedings." 8 U.S.C.

23  § 1252(g). This includes reviewing the method by which the Secretary of Homeland Security chooses to

24  commence removal proceedings. *See*, *e.g.*, *Wallace v. Secretary. U.S. Dep't of Homeland Sec.*, 616 Fed.

25  App'x 958, 961 (11th Cir. 2015) (affirming the district court's holding that it lacked subject matter

26  jurisdiction over "challenges to the government's initiation of removal proceedings."). Accordingly, this

27  Court has no jurisdiction to review the discretionary decision to detain a noncitizen who has been

28  charged as removable (which notably, Plaintiff has not been charged as removable). In sum, Plaintiff has

1    failed to establish any irreparable harm.

2        **D.    The Balance of Harms and the Public Interest Weighs Against Relief.**

3        Granting a preliminary injunction would be contrary to the public interest. The balance of harms

4    and the public interest elements of the injunctive relief test merge when the government is the opposing

5    party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public

6    consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*,

7    456 U.S. 305, 312-13 (1982). Entry of a preliminary injunction would be contrary to the public interest

8    here.

9        Here, Plaintiff has not met his burden of establishing that the balance of equities or the public

10   interest weigh in his favor. Congress has instilled in the Secretary of Homeland Security significant

11   authority to administer and enforce the United States immigration laws, including those governing the

12   conditions of admission of foreign students. *See* 8 U.S.C. §§ 1103(a), 1184(a)(1). And directly

13   applicable here, Congress has mandated that DHS develop and administer a "[p]rogram to collect

14   information relating to nonimmigrant foreign students." *See* 8 U.S.C. § 1372. Any order that enjoins a

15   governmental entity from enforcing actions taken pursuant to statutes enacted by the duly elected

16   representatives of the people constitutes an irreparable injury that weighs heavily against the entry of

17   injunctive relief. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). Granting

18   Plaintiff with the extraordinary relief that he seeks will effectively undermine DHS's authority to

19   enforce the provisions of the INA relating to the agency's ability to update and maintain the information

20   in SEVIS and, as such, to change SEVIS record status to "terminated" as needed, in order to carry out

21   the purposes of the program. The public interest would not be served by the Court enjoining the

22   authority of the agency to maintain this database.

23       **E.    If Injunctive Relief Is Ordered the Court Should Require Plaintiff to Post an**
             **Appropriate Bond.**
24

25       Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining

26   order only if the movant gives security in an amount that the court considers proper to pay the costs and

27   damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P.

28   65(c). If the Court grants a TRO or preliminary injunctive relief, Defendants respectfully request that the

1   Court require Plaintiff to post security during the pendency of the Court's Order in an amount that the

2   Court considers appropriate under Rule 65(c).

3   **V.      CONCLUSION**

4          For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's

5   motion for a TRO.

6

7   DATED:  April 21, 2025                    Respectfully submitted,

8                                            PATRICK D. ROBBINS
                                             Acting United States Attorney
9

10                                           *s/ Elizabeth D. Kurlan*
                                             ELIZABETH D. KURLAN
11                                           Assistant United States Attorney

12                                           *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28