*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, NW
Washington, DC 20536



U.S. Immigration
and Customs
Enforcement

JUN 0 1 2018

The Honorable Charles E. Grassley
Chairman
Committee on the Judiciary
United States Senate
Washington, DC 20510

Dear Chairman Grassley:

   Thank you for your March 22, 2018 letter. Secretary Nielsen asked that I respond on her behalf.

   Within the Department of Homeland Security, U.S. Immigration and Customs Enforcement's Homeland Security Investigations oversees the Student and Exchange Visitor Program and is working to provide you with responses to the questions outlined in your letter.

   Enclosed you will find responses to some of your questions. The remaining questions require data analysis or are of a more sensitive nature and must be cleared through additional channels before release. Those responses will be provided as soon as feasible.

   Thank you again for your letter and interest in this important matter.

                                    Sincerely,

                                    Thomas D. Homan
                                    Deputy Director and Senior Official
                                    Performing the Duties of the Director

cc: The Honorable Elizabeth DeVos, Secretary, Department of Education
    The Honorable Mike Pompeo, Secretary, Department of State

Enclosure

**The Department of Homeland Security's Response to**
**Chairman Grassley's March 22, 2018 Letter**

1. **I am concerned that DSOs are permitted to recommend student employment without obvious oversight mechanisms.  What steps, if any, does SEVP take to evaluate a DSO's recommendation that a student be authorized to work?**

U.S. Immigration and Customs Enforcement's (ICE) Student and Exchange Visitor Program (SEVP) has direct oversight over designated school officials (DSO) and may remove a DSO if they fail to comply with federal regulations.  8 C.F.R. § 214.3(l)(2) ("DHS may, at its discretion, reject the submission of any individual as a DSO or withdraw a previous submission by a school of an individual").  In addition, SEVP may withdraw a school's certification to enroll foreign students for violations of federal regulations.  For instance, 8 C.F.R. § 214.4(a)(2)(v), which provides that "willful issuance by a DSO of a false statement  . . . in connection with a student's school transfer or application for employment or practical training," is among the enumerated "valid and substantive" reasons to withdraw a school's SEVP certification.

Additionally, the DSO's recommendation is only the first step in obtaining an Employment Authorization Document (EAD) from U.S. Citizenship and Immigration Services (USCIS). Even after a DSO recommends a student for optional practical training (OPT), USCIS will evaluate the application, which is submitted via Form I-765, "Application for Employment Authorization," and determine whether the EAD should be granted.

a. **Who determines that CPT or OPT is "directly related" to a student's major area of study, and how is that requirement evaluated?  Please provide any relevant policy memoranda, internal guidance, or procedures.**

Under the regulations, a DSO may authorize a student to participate in a Curricular Practical Training (CPT) program "that is an integral part of an established curriculum." 8 C.F.R. § 214.2(f)(10)(i).  Neither ICE nor USCIS have any direct role in the determination of whether a particular program is an "integral part of a curriculum" as that is fundamentally an academic question and an EAD is not legally required to authorize CPT.  SEVP regularly reviews certified schools to ensure continued eligibility for nonimmigrant student enrollment and to monitor for compliance issues through out-of-cycle reviews and the recertification process.  With both types of review, SEVP assesses all aspects of institutional compliance, including CPT authorizations and OPT recommendations, to ensure that schools and DSOs adhere to the regulations.  Where violations are established, SEVP can withdraw a DSO's permission to access the Student and Exchange Visitor Information System (SEVIS) and/or may initiate withdrawal of the school's SEVP certification in accordance with 8 C.F.R. § 214.4.

With regard to OPT, DSOs determine if a training opportunity is "directly related" to a nonimmigrant student's course of study as an initial matter, and subsequently recommend students for OPT in SEVIS.  After a DSO recommends a student for OPT, the student

submits a Form I-765, "Application for Employment Authorization," to USCIS, and USCIS makes the final determination regarding whether an EAD for OPT should be granted.  There is often no way to assess the "direct relation" prior to granting an EAD because the student may not have a final offer when applying for an EAD.  However, SEVP regularly reviews schools' OPT and CPT procedures as part of the recertification process and through out-of-cycle reviews.

    i.    **Does SEVP investigate actual employment conditions to ensure that student employment is indeed directly related?  If the answer is yes, how many times have students been terminated from OPT or CPT because the actual work was not "directly related"?**

As noted above, SEVP regularly reviews schools to ensure compliance with the regulations.  SEVP does not keep statistics on the reason for termination of OPT and CPT students and therefore cannot pull the number of students who were terminated because their employment was determined to be unrelated to their course of study.

b.    **What government entity, if any, reviews the student-prepared and DSO-approved I-983 "training plan"?**

SEVP, on behalf of ICE, reviews Form I-983 submissions.  In writing the science, technology, engineering, and mathematics (STEM) OPT regulations, which became effective in May 2016, SEVP specifically included this form to augment its oversight of training programs and expand its ability to ensure compliance with federal regulations, including concerns about the direct relationship between a training opportunity and a student's degree.  By regulation, SEVP has the authority to initiate site visits of STEM OPT employers, and while the authorities are relatively new, SEVP has conducted such visits.  Nonimmigrants may also be required to submit the Form I-983 to USCIS for review.  USCIS officers are instructed to accept the DSO recommendation as evidence that SEVP has positively endorsed the I-983 training plan.  USCIS reserves the right to request a copy of the I-983 in the event that the record suggests contradictory evidence or potential fraud.

    i.    **If the training plan is reviewed by any DHS entity, what standards are applied to the review?  Please provide any policy memoranda, internal guidance, or procedures related to the evaluation of Form I-983.**

SEVP has not issued any specific guidance related to the evaluation of Form I-983 submissions.  SEVP conducts STEM OPT site visits in a manner similar to its school visits and is bound by the same regulatory constraints and due process concerns that accompany all such administrative actions.

   **c.**  **What corrective measures are taken if a school or DSO does not comply with relevant SEVP rules, procedures, or regulations?**

Schools are subject to ongoing review and investigation at any time; if violations are discovered, SEVP will take appropriate action.  These actions range from an official request for corrective action to the withdrawal of SEVP certification, depending on the severity and circumstances of the non-compliance.  DSOs may also be denied continued access to the SEVIS.

   **d.**  **Has DHS/SEVP ever denied or terminated a school official's permission to act as DSO?  If the answer is yes, please provide the number of officials who have been denied or terminated, and describe the facts and circumstances that warranted the denial/termination, in a confidential submission if necessary.**

The request for this data has been submitted, but has not been received prior to the transmittal of this letter.  The response will be forwarded to your office upon receipt and validation.

**2.**  **When DHS is made aware of alleged problematic activity that could reasonably lead to a school's decertification, at what point in the investigation or decertification process does SEVP terminate a school's authority to issue I-20s?  To approve CPT or OPT?**

Consistent with the federal regulations, SEVP generally does not terminate SEVIS access, which would eliminate a school's ability to issue I-20s, "until the appeals process has concluded and the initial denial or withdrawal has been upheld."  8 C.F.R. § 214.4(i)(2).  However, where SEVP is aware of criminal activity or national security threats, the regulations authorize immediate termination of SEVIS access.  *Id.*  Moreover, "a school whose certification is relinquished, or whose recertification is denied may, at SEVP discretion, no longer be able to create initial student records or issue new Forms I-20 . . . ."  8 C.F.R. § 214.4(i)(1).  In such cases, "all other SEVIS functionality, including event reporting for students, will remain unchanged until the school's SEVIS access termination date."  *Id.*  SEVP carefully considers these authorities on a case-by-case basis and balances the need for immediate action against other factors including increased litigation risks stemming from alleged due process or Administrative Procedure Act (APA) violations.

   **a.**  **When and how does SEVP (or any other DHS entity) notify other U.S. government agencies that concerns exist regarding the activity or certification status of a particular school?**

SEVP shares information on schools, including derogatory information, through common access to databases.  In addition, SEVP shares informal tips with our partners.





6. **Overstay detection and prevention. Under the SEVP framework, a DSO is responsible for reporting whether or not a student shows up and begins classes by the Initial Session Start Date and whether or not the student returns and enrolls at the start of each new session. Your publicly available guidance indicates that a DSO must "terminate" a student record in SEVIS if she or he knows that a student entered the country but did not enroll for classes, or should "cancel" if the student did not enroll and the DSO is unsure if the student entered the country.**

    a. **What action, if any, does SEVP and/or ICE or DHS take if a student is terminated? What efforts does ICE make to locate and remove the student?**

        ICE is responsible for investigating nonimmigrants who violate the terms of their admission to the United States, which includes F, M, and J visa overstays. To better manage investigative resources to investigate these leads, ICE HSI's Counterterrorism and Criminal Exploitation Unit relies on a prioritization framework which is established in consultation with interagency partners within the national intelligence and federal law enforcement communities. Those identified as posing a potential national security or public safety concern are prioritized and referred to ICE HSI field offices for investigation. If an investigation by the ICE HSI field office confirms that an individual is out-of-status based on corroborating facts and evidence, the subject will be administratively arrested and placed into removal proceedings.

    b. **Please explain the difference between terminating a record in SEVIS, and cancelling one, in terms of immigration status. Specifically: If a student's SEVIS status is cancelled, will that result in the student being out of legal status pursuant to U.S. immigration law?**

        SEVIS records serve as an indicator of a possible immigration status violation. SEVIS record terminations and cancellations are data entry actions in SEVIS that raise a flag indicating that an individual's status requires further investigation by the agency. An individual's SEVIS record can be terminated for a number of reasons, not all of which are negative. For instance, a student's SEVIS record will be terminated if the individual changes status and is no longer a nonimmigrant student. A certified school's designated officials can also terminate a student's SEVIS record when a student has been authorized for early withdrawal from a program of study. Such termination reasons are not typically indicative of a status violation. Conversely, other termination reasons implicate a nonimmigrant student's failure to meet the requirements of his or her nonimmigrant student status. For example, a SEVIS termination can result from a student's failure to enroll in a full course of study, unauthorized employment, or expulsion or suspension

from an SEVP-certified school.  Again, a SEVIS termination for any of these reasons requires further investigation before the Agency determines whether an individual has violated his or her status and to initiate removal proceedings.

A student whose SEVIS record has been terminated can seek reinstatement of his or her status with USCIS, provided that certain conditions are met.

A record cancellation is another data entry action in SEVIS and is only used in limited circumstances.  A SEVIS cancellation can be performed by a certified school's designated officials if the official has information that a prospective student, to whom the school issued a Certificate of Eligibility (Form I-20), has decided not to attend that school and has not entered the United States.

Additionally, if there is no port of entry (POE) information entered for an individual student record in SEVIS, the system will automatically cancel the record 60 days after the program start date indicated on the Form I-20 lapses.  SEVIS records are not cancelled after an individual enters the United States, when a SEVIS termination may be the appropriate SEVIS action.

**i.    If a student's SEVIS record is "canceled," and he or she later attempts to enter the United States on his or her student visa, will entry be denied solely on the basis of the SEVIS cancellation (assuming no error by immigration officials)?**

U.S. Customs and Border Protection (CBP) officers use SEVIS information in conjunction with information from the Certificates of Eligibility (Forms I-20 and DS-2019) to ensure that nonimmigrants seeking F, M, or J classes of admission have a SEVIS record that supports eligibility for admission to the United States. Using the SEVIS Admissibility Indicator Service (SEVIS-AI), ICE can transmit SEVIS data, including data regarding SEVIS record cancellations and terminations, to CBP.  CBP uses the information provided by SEVIS, in addition to other available information, to make a decision regarding the admissibility of the applicant into the United States.  If an applicant for admission at a POE intending to enter as a student does not meet the requirements for admission, including, but not limited to, a valid passport, a valid visa, and an approved Form I-20 (F and M) or DS-2019 (J), the applicant is not admissible in the appropriate student class of admission; and CBP may determine the applicant to be inadmissible to the United States.

c. **If such records are available, how many students were known or believed to be present in the United States (based on port of entry records or other reliable information) and subsequently were terminated in SEVIS because they did not report for the initial session, or for a new session, in the last three years (2015, 2016, 2017)?**

The request for this data has been submitted, but has not been received prior to the transmittal of this letter. The response will be forwarded to your office upon receipt and validation.

i. **Of those who were terminated, how many have been located by ICE?**

The request for this data has been submitted, but has not been received prior to the transmittal of this letter. The response will be forwarded to your office upon receipt and validation.

ii. **Please provide any information readily available regarding how many of such students are in removal proceedings or some other form of administrative proceedings related to immigration status.**

The request for this data has been submitted, but has not been received prior to the transmittal of this letter. The response will be forwarded to your office upon receipt and validation.

7. **Financial support:  Your regulations require that foreign students may be admitted if she or he presents "documentary evidence of financial support" and the Department of State relies in part upon the I-20 as evidence that the student "is financially able to pursue the proposed course of study."  Nonetheless, DHS policies permit paid student employment, which seems to run contrary to the concept that students be self-supporting.  What is the earliest date after a student's arrival for the initial term that he or she can begin to work for pay (in any program, including on-campus employment, CPT, or OPT)?**

Governing regulations permit student employment and work-based training for students under the limited circumstances, as follows:

On campus employment:  "[A]n F-1 student may not begin on-campus employment more than 30 days prior to the actual start of classes."  8 C.F.R. § 214.2(f)(9)(i).

Off-campus employment:  Employment can begin "after having been in F-1 status for one full academic year provided that the student is in good academic standing as determined by the DSO."  In emergent circumstances, the Secretary of Homeland Security "may suspend the applicability of any or all of the requirements of paragraph (f)(9)(ii) of this section by notice in the Federal Register."  8 C.F.R. § 214.2(f)(9)(ii)(A).

<u>Practical training</u>:  "Practical training may be authorized to an F-1 student who has been lawfully enrolled on a full-time basis, in a Service-approved college, university, conservatory, or seminary for one full academic year."  8 C.F.R. § 214.3(f)(10).

<u>CPT</u>:  "Exceptions to the one academic year requirement are provided for students enrolled in graduate studies that require immediate participation in curricular practical training." 8 C.F.R. § 214.3(f)(10)(i).  This encompasses graduate students whose practical, work-based training is integral to the program of study, i.e., the student cannot progress in the program until this practical training is completed.

<u>OPT</u>:  In addition to the one full academic year of enrollment requirement, "[t]he student may not begin optional practical training until the date indicated on his or her employment authorization document, Form I-766."  8 C.F.R. § 214.2(f)(10)(ii)(A).  USCIS authorization is required.

<u>STEM OPT</u>:  Student must be "in a valid period of post-completion OPT," have completed all requirements of a qualifying degree, and "a student meeting the eligibility requirements for a 24-month OPT extension under [8 C.F.R. § 214.2(f)(10)(ii)(C)] may request an extension of employment authorization by filing Form I-765."  8 C.F.R. § 214.2(f)(11)(i)(C). The student must be engaged in work-based training under post-completion OPT and may continue with that training or other qualifying training without interruption, i.e., there is no gap between post-completion OPT and the 24-month extension.

**a.  How many students in 2015, 2016, and 2017, began working as soon as permitted?**

The request for this data has been submitted, but has not been received prior to the transmittal of this letter.  The response will be forwarded to your office upon receipt and validation.