Marc Van Der Hout (CA Bar #80778)
Johnny Sinodis (California Bar # 290402)
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
Fax: (415) 981-3003
Email: ndca@vblaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| John Doe,<br><br>     Plaintiff,<br><br>     v.<br><br>Donald J. TRUMP, in his official capacity, President of the United States of America;<br><br>Moises BECERRA, in his official capacity, Acting Field Office Director of San Francisco Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security;<br><br>Todd M. LYONS, in his official capacity, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; and<br><br>Kristi NOEM, in her official capacity, Secretary, U.S. Department of Homeland Security,<br><br>     Defendants. | Case No. 4:25-cv-03140-JSW<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br><u>Request for Declaratory and Injunctive Relief</u><br><br>Judge: Hon. Jeffrey White<br>Hearing Date: April 25, 2025<br>Hearing Time: 9:00 a.m. |

**USCIS Notice of Intent to Deny Nonimmigrant Change of Status Petition, Issued to a Similarly Situated Noncitizen (not Plaintiff here) on April 18, 2025:**

> *According to the beneficiary's SEVIS Record [] their F-1 nonimmigrant status was terminated on April 10, 2025 because of the criminal records check and the revocation of their F-1 visa....It appears that the beneficiary is not in valid F-1 nonimmigrant status, as such, the request for a change of nonimmigrant status may not be approved.....As such, the beneficiary failed to maintain the beneficiary's nonimmigrant status.*

Attached as Exhibit A.

**Declaration of Brian Childs, Designated School Official for Western Michigan University:**

> *[I]f the SEVIS record is terminated for a violation of F-1 status, we inform the student that there is no grace period and they are required to leave the United States immediately. ... Regardless of the reason for the termination, all SEVIS terminations result in the loss of all benefits by the student associated with their student status.*
> *...*
> *[I]f a student was terminated in SEVIS, but still seen to be in F-1 status, it would be impossible for WMU to comply with the federal regulatory requirements and thus the student would also be noncompliant with the regulations. In addition, after the termination of a SEVIS record, a DSO cannot print an I-20 for the student. It is and has always been the understanding of WMU that all F-2 international students must maintain a valid I-20 in SEVIS in order to remain in valid F-1 status.*
> *...*
> *Even prior to the March and April 2025 SEVIS terminations, it has always been clear that once an F-1 student's record in SEVIS is terminated, regardless of the reason, that student immediately loses all on- and off-campus employment authorization based on their F-1 nonimmigrant status.*

Attached as Exhibit B.

**The Honorable Judge Ana C. Reyes Questioning Assistant U.S. Attorney Joseph F. Carrilli Jr. on April 16, 2025**:

> *Do you realize that this is Kafkaesque? I've got two experienced immigration lawyers on behalf of a client who is months away from graduation, who has done nothing wrong, who has been terminated from a system that you all keep telling me has no effect on his immigration status, although that clearly is BS.*

Attached as Exhibit C.

**Testimony From Expert Witness Stephen Navarre in *Nali v. Noem, et al.*, 1:25-cv-03969**

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
PLAINTIFF'S REPLY ISO MOTION FOR TRO

i

**(N.D. Ill. Apr. 18, 2025)**

> *[T]his is not an opinion; this is a fact. If Mr. Nali's SEVIS system status remains terminated, he is positively, absolutely ineligible to be accorded work authorization by USCIS under the OPT program.*
>
> *You cannot participate in this F-1 student program fully without an active SEVIS record.*

Attached as Exhibit E.

## <u>TABLE OF CONTENTS</u>

I.  **INTRODUCTION** ................................................................................................ 1

II.  **ARGUMENT** ................................................................................................... 3

   a.  **Plaintiff Seeks to Maintain the Status Quo Through the TRO** ........................ 3

   b.  **Plaintiff Meets the Standard to Warrant a TRO** ........................................ 4

      i.  **Plaintiff has established a likelihood of success on the merits** ................. 4

      ii.  **Neither 8 U.S.C. § 1252(g) nor § 1252(e) are implicated** ........................ 12

      iii.  **Plaintiff clearly establishes a likelihood of immediate irreparable harm, and that the balance of harms and public interest weigh in favor of relief** .................... 13

   c.  **The Requirements of Rule 65(c) Do Not Apply** ......................................... 15

III.  **CONCLUSION** ............................................................................................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**          **Pages**

*Doe 1 v. DHS*, No. 220CV09654VAPAGRX,

   2020 WL 6826200 (C.D. Cal. Nov. 20, 2020) ........................................................ 11

*Student Doe v. Noem*, 2:25-CV-01103-DAD-AC,

   2025 WL 1134977 (E.D. Cal. Apr. 17, 2025) ........................................ 5, 12, 13, 14

*Al Otro Lado v. Wolf*,

   497 F. Supp. 3d 914 (S.D. Cal. 2020) .................................................................... 3

*Alliance for the Wild Rockies v. Cottrell*,

   632 F.3d 1127 (9th Cir. 2011) ............................................................................... 4

*ASSE Int'l, Inc. v. Kerry*,

   803 F.3d 1059 (9th Cir. 2015) ............................................................................. 10

*Batalla Vidal v. Nielsen*,

   279 F. Supp. 3d 401 (E.D.N.Y. 2018) ................................................................. 14

*Bennett v. Spear*,

   520 U.S. 154 (1997) ...................................................................................... 5, 6, 9

*Brown v. Holder*,

   763 F.3d 1141 (9th Cir. 2014) ............................................................................. 10

*Cota v. United States*,

   628 Fed. Appx. 500 (9th Cir. Dec. 31, 2015) ...................................................... 10

*Doe v. Noem*,

   2025 WL 1141279 (W.D. Wash. Apr. 17, 2025) ........................................... 13, 14

*Fan v. Brewer*,

   2009 WL 1743824 (S.D. Tex. June 17, 2009) ..................................................... 11

*Fang v. DHS*,

   935 F.3d 172 (3d Cir. 2019) ............................................................................. 5, 6

*GoTo.com, Inc. v. Walt Disney Co.*,

202 F.3d 1199 (9th Cir. 2000) ............................................................................... 3, 4

*Hernandez v. Sessions*,

872 F.3d 976 (9th Cir. 2017) ........................................................................ 2, 4, 13

*Jennings v. Rodriguez*,

583 U.S. 281 (2018) ............................................................................................... 12

*Karakozova v. Univ. of Pittsburgh*,

2009 WL 1652469 (W.D. Pa. June 11, 2009) ..................................................... 14

*Maria v. Loyola Univ. of Chicago Stritch Sch. of Med.*,

2025 WL 96482 (N.D. Ill. Jan. 14, 2025) ........................................................... 14

*Melendres v. Arpaio*,

695 F.3d 990 (9th Cir. 2012) ............................................................................... 13

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29 (1983) ................................................................................................. 10

*Newman v. Sathyavaglswaran*,

287 F.3d 786 (9th Cir. 2002) ............................................................................... 11

*Perry v. Sindermann*,

408 U.S. 593, 601–03 (1972) ............................................................................... 11

*S.M. v. Del. Dep't of Educ.*,

77 F. Supp. 3d 414 (D. Del. 2015) ...................................................................... 11

*Sied v. Nielsen*,

2018 WL 1142202 (N.D. Cal. Mar. 2, 2018) ..................................................... 12

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,

240 F.3d 832 (9th Cir. 2001) ................................................................................. 4

*Tully v. Orr*,

608 F.Supp. 2d 1222 (E.D.N.Y. 1985) ............................................................... 14

*United States v. Hovsepian*,

359 F.3d 1144 (9th Cir. 2004) ............................................................................. 12

*Winter v. Nat. Res. Def. Council, Inc.*,

   555 U.S. 7 (2008) ............................................................................................ 4

*Zhao v. Va. Polytechnic Inst. & State Univ.*,

   2018 WL 5018487 (W.D. Va. Oct. 16, 2018) ..................................................... 11

**Statutes**

8 U.S.C. § 1227(a)(1)(B) ................................................................................... 1

8 U.S.C. § 1227(a)(1)(C)(i) ............................................................................ 3, 6

8 U.S.C. § 1252(g) .......................................................................................... 12

8 U.S.C. § 1372(a)(1) ....................................................................................... 9

§ 1252(e) ........................................................................................................ 12

**Regulations**

8 C.F.R. § 214.1(d) .......................................................................................... 10

## I.    INTRODUCTION

Plaintiff John Doe is a former international student from a Muslim-majority country working in the United States pursuant to approved post-graduate employment authorization who has had his professional and personal life torn apart abruptly, unfairly, and unlawfully when they found out that their Student and Exchange Visitor Information Systems ("SEVIS") record was unceremoniously terminated by U.S. Immigration and Customs Enforcement ("ICE") as part of a wave of SEVIS terminations and F-1 visa revocations during the past several weeks. They are one of over a thousand international students who have faced the same unlawful actions by Defendants.[1] No matter how the Defendants try to justify or explain the actions, they are not able to do so in a way that demonstrates compliance with law.

ICE's widespread policy and practice of unlawful terminations appears to be designed to coerce students and post-graduate workers, including Plaintiff, into abandoning their post-graduate employment and choosing to voluntarily leave the country, despite not having violated their status. As part of that policy, ICE has engaged in highly publicized arrests of students and post-graduate workers who presented no flight risk or danger, often with no prior notice that anything regarding their status was amiss or problematic, whisking them away from their campuses to faraway detention centers without warning.[2] The terminations have also taken

---

[1] *See* International Student Visas Revoked, INSIDE HIGHER ED, https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked (last accessed Apr. 22, 2025); Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students,* Associated Press, April 4, 2025, https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Kaleem, Jaweed, *Trump administration cancels dozens of international student visas at University of California, Stanford*, Los Angeles Times, April 5, 2025, https://www.latimes.com/california/story/2025-04-05/trump-administration-cancels-international-student-visas-university-of-california-stanford

[2] *See, e.g.*, McKinnon de Kuyper, *Mahmoud Khalil's Lawyers Release Video of His Arrest*, N.Y. Times (Mar. 15, 2025), *available at* https://www.nytimes.com/video/us/politics/100000010054472/mahmoud-khalils-arrest.html (Mahmoud Khalil, arrested in New York and transferred to Louisiana); "What we know about the Tufts University PhD student detained by federal agents," CNN (Mar. 28, 2025), https://www.cnn.com/2025/03/27/us/rumeysa-ozturk-detained-what-we-know/index.html

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
PLAINTIFF'S REPLY ISO MOTION FOR TRO

place against the backdrop of numerous threats issued to universities to cut off billions of dollars of federal funding and retribution against others who have dared to criticize or go against the administration.[3]

This is an unprecedented moment in U.S. history, and one that warrants a commensurate response from the courts. As an *ultimate* remedy, Plaintiff is asking that their SEVIS record be restored to the status they had before termination, with the commensurate restoration of their nonimmigrant visa status to the extent it has been interrupted. Meanwhile, the relief Plaintiff *currently* seeks through their motion for a temporary restraining order ("TRO") only serves to preserve the status quo ante litem prior to March 28, 2025. That temporary remedy ensures that Plaintiff is not unlawfully arrested, separated from their U.S. citizen spouse, and incarcerated in an immigration jail like numerous other similarly situated noncitizens who ICE has victimized in the last several weeks. Sinodis Decl. at Exs. G, I, K; *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) ("noting irreparable harms imposed on anyone subject to immigration detention"). The TRO also enables Petitioner to maintain the same rights they had before the illegal termination of their SEVIS, including the ability to continue with their employment in practical training and change their status to the next visa status—which the U.S. Department of Homeland Security ("DHS") has already approved. Sinodis Decl. at Ex. L (DHS H-1B

---

(Rumeysa Ozturk, arrested in Boston and transferred to Louisiana); Kyle Cheney & Josh Gerstein, *Trump is seeking to deport another academic who is legally in the country, lawsuit says*, Politico (Mar. 19, 2025), *available at* https://www.politico.com/news/2025/03/19/trump-deportationgeorgetown-graduate-student-00239754 (Badar Khan Suri, arrested in Arlington, Virginia and transferred to Texas); *See* also Declaration of Johnny Sinodis ("Sinodis Decl.") at Exhibit ("Ex.") (Declaration of Linus Chan); *Id*. at Ex. I (TRO issued in *Mohammed H. v. Trump, et al.*, No. 25-cv-01576-JWB-DTS, Dkt. 15); *Id*. at Ex. M (Plaintiff's SEVIS Termination Notice); *see also id*. at Ex. K (Notice to Appear Issued to Noncitizen Whose SEVIS Record Was Terminated by ICE and Whose F-1 Visa Was Revoked, Leading ICE to Initiate Removal Proceedings Under 8 U.S.C. § 1227(a)(1)(B)).

[3] *See, e.g.*, "Trump administration freezes $2 billion after Harvard rejects demands," NBC (Apr. 14, 2025), available at: https://www.nbcnews.com/news/us-news/harvard-rejects-trump-administration-demands-threats-funding-cuts-rcna201203; "A List of Who Trump Has Targeted for Retribution," N.Y. Times (Apr. 7, 2025), available at: https://www.nytimes.com/interactive/2025/04/07/us/trump-revenge-list.html.

Approval Notices). Such temporary remedies are well within the scope of measures that the Court has authority to take to protect litigants and manage proceedings, as evidenced by the dozens of TROs granted by other courts throughout the country in identical or significantly similar litigation. Sinodis Decl. at Ex. N (TROs Issued to Similarly Situated Noncitizens).[4]

## II.    ARGUMENT

### a.    Plaintiff Seeks to Maintain the Status Quo Through the TRO.

As an initial matter, the Court should reject Defendants' assertion that Plaintiff's motion seeks to alter the status quo. *See* Dkt. 19, Defendants' Opposition ("Opp.") at 7-9. In this case, a TRO would merely restore Plaintiff to the uncontested status they held *prior to* Defendants' unlawful action on March 28, 2025. Sinodis Decl. at Ex. M (SEVIS Notice Asserting 8 U.S.C. § 1227(a)(1)(C)(i) As the Basis for Termination). This would *preserve*, not alter, the status quo, which "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotations and citations omitted); *see also Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914, 925 (S.D. Cal. 2020) (holding same, collecting cases in immigration context). Finding otherwise "would lead to absurd situations, in which plaintiffs could never bring suit once infringing conduct had [already] begun." *Id.*

Here, the last uncontested status existed prior to the Defendants' action terminating Plaintiff's SEVIS. *See id.* Defendants' assertion that Plaintiff is seeking reinstatement of their SEVIS record at this time is incorrect. Opp. at 7-8. To be clear, the TRO asks the Court to, among other actions, "[e]njoin any legal effect that the unlawful termination of Plaintiff's SEVIS status or the potential unlawful revocation of their F-1 visa may have." TRO at 22. This

---

[4] *See also, e.g.*, *W.B. v. Noem et al.*, 25-cv-03407 (N.D. Cal., Apr. 23, 2025), *S.Y., et al., v. Noem, et al.*, 5:25-cv-03244 (N.D. Cal. Apr. 18, 2025); *Chen, et al., v. Noem, et al.*, 3:25-cv-03292 (N.D. Cal. Apr. 18, 2025); *Doe 1 v. Trump, et al.*, 2:25-cv-02825, (D.N.J. Apr. 18, 2025); *Student Doe v. Noem, et al.*, 2:25-cv-01103, (E.D. Cal. Apr. 17, 2025); *Doe v. Noem, et al.*, 2:25-cv-00633, ECF No. 16 (W.D. Wash. Apr. 14, 2025); *Dogan v. Noem*, 1:25-cv-01130 (D.D.C. Apr. 18, 2025); *J. v. Noem, et al.*, 0:25-cv-01391 (D. Minn. Apr. 17, 2025); *Liu v. Noem, et al.*, 1:25-cv-00133, (D.N.H., Apr. 10, 2025); *Mashatti v. Lyons*, 1:25-cv-01100, (D.D.C. Apr. 17, 2025); *Doe No. 2 v. Trump, et al*., 4:25-cv-00175, (D. Ariz. Apr. 15, 2025).

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
PLAINTIFF'S REPLY ISO MOTION FOR TRO
3

1    would not give Plaintiff any benefit or status that they did not otherwise already have, but rather

2    it would maintain the status quo of the position Plaintiff was in *prior to* Defendants' unlawful

3    action—which is the correct point of measurement. *See GoTo.com, Inc.*, 202 F.3d at 1210.[5]

### b. Plaintiff Meets the Standard to Warrant a TRO.

5        This Court should follow the scores[6] of other federal district courts that have rejected the

6    very arguments advanced by Defendants in their opposition to Plaintiff's motion for a TRO.

7    Plaintiff has established their entitlement to a TRO by clearly demonstrating: (1) a likelihood of

8    success on the merits; (2) they will likely suffer irreparable harm in the absence of preliminary

9    relief; (3) the balance of equities tips in their favor; and (4) injunctive relief is in the public

10   interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co.*

11   *v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Moreover, at a minimum,

12   Plaintiff establishes the alternative standard—that they raise "serious questions" as to the merits

13   of their claims, the balance of hardships tip "sharply" in their favor, and the remaining equitable

14   factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

### i. Plaintiff has established a likelihood of success on the merits.

### 1. The termination of Plaintiff's SEVIS record constitutes final agency action.

17       Contrary to Defendants' claim, the termination of Plaintiff's SEVIS record constitutes

18   final agency action for purposes of review under the Administrative Procedure Act ("APA").

19   Opp. at 9-10. Plaintiff is aware that SEVIS records are distinct from F-1 nonimmigrant status,

20   despite Defendants' suggestion otherwise. Dkt. 1, ¶ 21. However, Defendants appear to wholly

21   ignore that a noncitizen's SEVIS status is meaningful, as it is undoubtedly tied to their ability to

22   engage in the actions that are the reason for their presence in the United States in the first place:

23   continue their studies or employment pursuant to their F-1 nonimmigrant status; work pursuant

---

[5] Even if the Court found that Plaintiff were seeking a mandatory injunction, that standard would be met here. *Hernandez*, 872 F.3d at 998–99. An alleged violation of Petitioner's due process rights and his risk of unlawful detention in violation of those rights constitutes extreme or very serious damage that will result in the absence of an injunction. *Id.* at 999.

[6] *See supra* n. 4.

to practical training related to their course of study; change their status to another immigration status; or otherwise remain in the United States without accumulating any unlawful presence. Defendants' attempt to argue that the termination of SEVIS status is completely benign and legally meaningless is contrary to law, including DHS's own interpretation of the law. Sinodis Decl. at Ex. A (USCIS NOID) (stating that the noncitizen is no longer in F-1 nonimmigrant status given that ICE terminated their SEVIS); *see also W.B. v. Noem et al.*, 25-cv-03407 (N.D. Cal., Apr. 23, 2025), Dkt. 17 at 5 ("The SEVIS termination notice states the action in the absolute; it does not say that the termination of F-1 status is under investigation or that W.B. may lose her F-1 status. Instead, it says that her status is terminated.").

Under the APA, agency action is reviewable where it marks the "consummation" of the agency's decision-making process and where legal consequences flow from that action—that is, where the action determines rights or obligations. *Bennett v. Spear*, 520 U.S. 154, 178 (1997). Here, it is clear that the termination of a Plaintiff's SEVIS records meets this standard. There is no appeal of the termination of a SEVIS record, in immigration courts or otherwise, because the SEVIS record, and any processes related to that, is collateral to removal proceedings. Multiple courts have already recognized that "termination of the SEVIS registration constitutes a final decision reviewable under the APA." [7] Sinodis Decl. at Ex. N (TROs Issued to Similarly Situated Noncitizens); *see also Fang v. DHS*, 935 F.3d 172, 177 (3d Cir. 2019) (in a letter to plaintiffs, DHS stated, "*[s]ince your SEVIS record has been terminated you no longer have valid F-1 nonimmigrant status* and must either file for reinstatement with [USCIS] or depart the United States immediately.") (emphasis added). The termination of a SEVIS record therefore constitutes final agency action for purposes of APA review.

Moreover, Defendants' position that no legal consequences flow from the termination of Plaintiff's SEVIS record is untenable and defies their own agency interpretation in multiple ways. First, this position is contradicted by DHS and USCIS's own published guidance.

---

[7] *See, e.g., Doe v. Bondi*, No. 1:25-cv-01998-VMC, slip op. at 9 (N.D. Ga. Apr. 18, 2025); *Doe v. Noem et al.*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977, at *5 (E.D. Cal. Apr. 17, 2025).

According to "Study in the States," which is DHS's own website, termination of an F-1 SEVIS record triggers immediate legal consequences: "The student loses all on and/or off-campus employment authorization," "cannot re-enter the United States on the terminated SEVIS record," and "any associated F-2 or M-2 dependent records are terminated."[8] The guidance further indicates that such termination then requires departure from the country, as it states that "[ICE] agents may investigate to confirm the departure of the student." *Id.* These outcomes directly contradict Defendants' novel position that SEVIS termination has no bearing on lawful status or eligibility for benefits—not to mention the actual termination notice issued to Plaintiff. Sinodis Decl. at Ex. M (SEVIS Notice Asserting Termination Based on 8 U.S.C. § 1227(a)(1)(C)(i))—Violation of Nonimmigrant Status). These consequences of SEVIS termination alone satisfy the "rights or obligations" test for finality. *Bennett*, 520 U.S. at 178.

Second, an active SEVIS record is a mandatory prerequisite for other related benefits, including employment authorization under Optional Practical Training ("OPT") or submitting an application to change status to another nonimmigrant status. To obtain OPT employment authorization, the Designated School Official ("DSO") must enter "the recommendation for OPT into a student's SEVIS record."[9] Thus, without an active SEVIS record, a student cannot obtain OPT work authorization. *Id.*; *see also* Sinodis Decl. at Ex. B (Declaration of Brian Childs, DSO) ("[I]t has always been clear that once an F-1 student's record in SEVIS is terminated, regardless of the reason, that student immediately loses all on- and off-campus employment authorization based on their F-1 nonimmigrant status."). Plaintiff, who was on OPT at the time of the SEVIS termination, was informed that they could no longer work. Hence this is a clear and direct consequence for Plaintiff of the SEVIS termination.

In addition, when a noncitizen in F-1 status seeks to change status to another

---

[8] U.S. Department of Homeland Security, Study in the States (Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.
[9] U.S. Citizenship and Immigration Services, Optional Practical Training (OPT) for F-1 Students (Nov. 25, 2024), https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-opt-for-f-1-students.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
PLAINTIFF'S REPLY ISO MOTION FOR TRO

nonimmigrant status, such as another kind of work visa (H-1B), the legal requirement is that the student or post-graduate worker be currently in lawful nonimmigrant status.[10] To prove that the individual is in fact in status, USCIS—a component of DHS—requires an active SEVIS record and valid Form I-20, Certificate of Eligibility for Nonimmigrant Student Status. Yet, without a valid SEVIS record, an F-1 visa holder cannot obtain a properly endorsed Form I-20 and thus cannot actually qualify for these benefits, regardless of whether DHS deems them—for argument's sake—"technically" in status. USCIS itself has stated this is the actual consequence of SEVIS termination in the context of a pending application by a student to change immigration status, in which USCIS indicated its intention to deny that pending application specifically because the termination of SEVIS indicated a failure by that noncitizen applicant to maintain the requisite valid immigration status:

> [R]ecords show that the Department of State revoked the beneficiary's F-1 visa on [redacted] 2025. According to the beneficiary's SEVIS record [SEVIS ID redacted], their F-1 nonimmigrant status was terminated on April 10, 2025 because of the criminal records check and the revocation of their F-1 visa. . . . It appears that the beneficiary is not in valid F-1 nonimmigrant status, as such, the request for a change of nonimmigrant status may not be approved.

Sinodis Decl. at Ex. A (USCIS NOID). Thus, the position of USCIS itself undercuts the Defendants' claimed legal position in these proceedings.

Third, in similar lawsuits across the country, witness testimony has been illuminating. The witness that Defendants rely on in the form of declaration here presented testimony that did not actually support Defendant's claimed position, leading courts to grant TROs over these positions, while other witnesses clearly contradicted it. For example, in *Patel v. Lyons*, 1:25-cv-01096-ACR (D.D.C. Apr. 16, 2025), Andre Watson appeared telephonically to testify—the very same Officer Watson whose declaration Defendants submit in support of their opposition here. Sinodis Decl. at Ex. C. When the Honorable Judge Reyes in that case questioned Officer Watson regarding whether "as of this moment," "Mr. Patel [is] legally in the United States," *id.*

---

[10] *See, e.g.*, "Change of Status," DHS Study In the States, available at: https://studyinthestates.dhs.gov/students/complete/change-of-status (last visited Apr. 23, 2025).

at 22:22-23, Officer Watson stated that the SEVIS termination "in itself…doesn't terminate his nonimmigrant status at this point," *id*. at 22-23, but that he "can't say that he's legally in the United States." *Id.* at 22-23. Judge Reyes then pressed Defendants' counsel, Mr. Carilli, asking: "Is he [the Plaintiff] lawfully in the United States right now, yes or no?," *id*. at 52:9-10, to which Mr. Carilli responded, "I'm not able to answer that question, Your Honor," *id*. at 52:11-12. Exasperated, Judge Reyes admonished, "Do you realize this is Kafkaesque?" *Id*. at 53:8-9. Judge Reyes granted the TRO one day later. Sinodis Decl. at Ex. D (Order, *Patel v. Lyons*, 1:25-cv-01096-ACR (D.D.C. Apr. 17, 2025)).

Subsequently, on April 18, 2025, a similar hearing took place in *Nali v. Noem, et al.*, 1:25-cv-03969 (N.D. Ill. Apr. 18, 2025). In that case, Defendants also filed Officer Watson's template declaration—as Defendants have here. Sinodis Decl. at Ex. E (Transcript, *Nali v. Noem*, et al., 1:25-cv-03969, (N.D. Ill. Apr. 18, 2025)) at 28-29. The *Nali* court also qualified as an expert witness Stephen Navarre, an experienced immigration attorney with expertise in employment-based nonimmigrant visas and international students. *Id.* at 22, 56. His testimony helps explain the relevant legal situation of the SEVIS-terminated students.

Regarding the consequences of the plaintiff's terminated SEVIS status, Mr. Navarre testified that: "this is not an opinion; this is a fact. If Mr. Nali's SEVIS system status remains terminated, he is positively, absolutely ineligible to be accorded work authorization by USCIS under the OPT program." *Id.* at 39. Moreover, schools "cannot independently resurrect that SEVIS record. It's been terminated by the government. Only the government can reactivate that." *Id.* at 32-33. Mr. Navarre summarized his opinion as follows: "You cannot participate in this F-1 student program fully without an active SEVIS record." *Id.* at 32. The court granted the TRO in this case that same day. Sinodis Decl. at Ex. F (Order, *Nali v. Noem*, et al., 1:25-cv-03969 (N.D. Ill. Apr. 18, 2025)).[11]

Finally, as a practical matter, the termination of SEVIS records of other, similarly

---

[11] Defendants cite the only two cases in the country that undersigned Counsel is aware of where the TRO in a similar case was denied, Opp. at 2, but ignores the dozens of TROs (if not more) that district courts have granted. *See* Sinodis Decl. at Ex. N (TROs).

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
PLAINTIFF'S REPLY ISO MOTION FOR TRO

situated noncitizens, has been the factual basis on which their incarceration and/or

removal proceedings began. *See, e.g., Gunaydin v. Trump*, 0:25-cv-01151 (D. Minn)

(student detained by ICE after termination of SEVIS); Sinodis Decl.at Ex. G (Declaration

of Linus Chan) (discussing multiple noncitizen students who were detained by ICE and

put into removal proceedings after their SEVIS records were terminated); Ex. I (TRO

issued in *Mohammed H.*, No. 25-cv-01576-JWB-DTS, Dkt. 15) (preventing transfer of

student detained by ICE after SEVIS termination). The emails sent by the U.S.

Department of State to noncitizens in identical circumstances as Plaintiff only confirm

their vulnerability to being arrested and incarcerated at any moment:

> Remaining in the [U.S.- without a lawful immigration status can result in fines,
> detention, and/or deportation.  It may also make you ineligible for a future U.S.
> visa.  Please note that deportation can take place at a time that does not allow the person
> being deported to secure possessions or conclude affairs in the United States.  Persons
> being deported may be sent to countries other than their countries of origin.

*See* Sinodis Decl. at Ex. H (Declaration of Ami Hutchinson). The above message is a

generally correct statement of law, which carries a clear meaning when sent to an

individual whose SEVIS record has just been terminated: that the government believes

the individual is *required* to leave the country. Otherwise, why assert such drastic

consequences of failing to do so?

     The abrupt termination of Plaintiff's SEVIS record is a unilateral determination

by Defendants with immediate consequences, and which Plaintiff has no ability to appeal

or seek administrative review. Under *Bennett*, when there are no remaining steps that an

immigrant can take to have an action reviewed within the agency, the action is final and

subject to judicial review. *Bennett*, 520 U.S. at 200.

### 2. Defendants' actions in terminating Plaintiff's SEVIS record were arbitrary and capricious.

     Defendants assert that their actions were not arbitrary and capricious because, according

to Defendants, 8 U.S.C. § 1372(a)(1) provides DHS unchecked power to terminate students'

records as part of conducting the SEVIS program. Opp. at 10. This assertion again implicitly

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
PLAINTIFF'S REPLY ISO MOTION FOR TRO

1   ignores the very real consequences stemming from this unlawful action. Further yet, this

2   argument fails to account for the fact that, in abruptly terminating Plaintiff's SEVIS record,

3   DHS provided no prior notice, no individualized explanation, and no opportunity for them to

4   respond—all of which are hallmarks of arbitrary agency action. *See Motor Vehicle Mfrs. Ass'n*

5   *v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("an agency must examine the

6   relevant data and articulate a satisfactory explanation for its action"); *see also Cota v. United*

7   *States*, 628 Fed. Appx. 500 (9th Cir. Dec. 31, 2015) (implying that lack of opportunity to

8   respond is arbitrary and capricious action under the APA). Instead, Defendants issued a vague

9   notice stating that Plaintiff had "otherwise fail[ed] to maintain status," and referencing "criminal

10  records," which could only refer to Plaintiff's minor misdemeanor conviction that has no impact

11  whatsoever on their ability to maintain their nonimmigrant status. Sinodis Decl. at Ex. M

12  (Plaintiff's SEVIS Termination Notice). Moreover, Plaintiff has repeatedly disclosed this

13  conviction to Defendants, as they twice applied for an H-1B visa and was approved by USCIS

14  *after* the agency requested documentation of their conviction. *Id.* at Ex. L (H-1B Approval

15  Notices). This conduct violates DHS's own regulations, which limit status terminations to

16  specific, published grounds. *See* 8 C.F.R. § 214.1(d). Absent any reasoned explanation or lawful

17  basis, the indiscriminate termination here clearly violated the APA.

18            **3.  Plaintiff has a property interest in their SEVIS record.**

19            Plaintiff has a constitutionally protected property interest in their SEVIS registration.

20  *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property

21  interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148

22  (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for

23  naturalization). Defendants' abrupt termination of Plaintiffs' SEVIS record deprived them of

24  that protected property interest without due process, in violation of the Fifth Amendment.

25            Defendants created a reasonable expectation that Plaintiff would be permitted to live and

26  work in the United States without being subject to arbitrary termination of their SEVIS record

27  and the threat of arrest and incarceration if they complied with all conditions of their

28  *Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
    PLAINTIFF'S REPLY ISO MOTION FOR TRO

nonimmigrant visa and status. This reasonable expectation creates constitutionally-protected liberty and property interests. *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest). These interests are entitled to constitutional protections no matter how they may be characterized by Defendants. *See, e.g., Newman v. Sathyavaglswaran*, 287 F.3d 786, 797 (9th Cir. 2002) ("[T]he identification of property interests under constitutional law turns on the substance of the interest recognized, not the name given that interest by the state or other independent source.") (internal quotations omitted).

Defendants rely heavily on *Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487 (W.D. Va. Oct. 16, 2018), for the proposition that Plaintiff here did not have a property interest in their SEVIS record that would implicate due process. Opp. at 11. But *Zhao* is inapposite for several reasons. First, as Defendants admit, *Zhao* dealt with a SEVIS record modification by a school's DSO—not the government—which the court described as "clerical duty performed as a preliminary matter." *Id.* at *6. This situation is wholly distinct from what occurred in Plaintiff's case, where ICE, rather than the school, unilaterally made the unlawful decision to terminate Plaintiff's SEVIS status. Second, the *Zhao* court found that the termination of Plaintiff's enrollment—the claimed property interest—was distinct from his SEVIS status because the university did not prohibit students from enrolling based on their SEVIS status. Here, Plaintiff immediately lost the ability to work following, and solely because of, the termination of their SEVIS status, and he also became subject to the threat of arrest, incarceration and deportation. *See W.B.*, 25-cv-03407 (N.D. Cal., Apr. 23, 2025), Dkt. 17 at 8 (finding that plaintiff established, at a minimum, serious questions going to the merits of her due process claim). Plaintiff was therefore entitled to notice and an opportunity to respond before that status was terminated.[12]

---

[12] The other cases cited by Defendants are similarly irrelevant. Opp. at 11, n. 4. *S.M. v. Del. Dep't of Educ.*, 77 F. Supp. 3d 414, 419 (D. Del. 2015), does not deal with SEVIS termination at all. In *Fan v. Brewer*, No. 08-cv-3524, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009), the plaintiff was expelled from school for not complying with the terms of his status and sued the

1

2              ii.   **Neither 8 U.S.C. § 1252(g) nor § 1252(e) are implicated.**

3          Defendants argue that 8 U.S.C. § 1252(g) prohibits district courts from hearing

4  challenges to decisions and actions about whether, when, and where to commence removal

5  proceedings, and that § 1226(e) bars relief that would impact where and when to detain a

6  noncitizen. Opp. at 14. Both arguments are meritless, as other courts have already held. *See, e.g.,*

7  *Student Doe v. Noem et al.*, 2025 WL 1134977 at *8 (E.D. Cal. Apr. 17, 2025). Section 1252(g)

8  addresses challenges predicated on the purported improper use of discretionary authority to

9  commence removal proceedings, which is not at issue here. "The Ninth Circuit has held

10 consistently that Section 1252(g) should be interpreted narrowly." *Sied v. Nielsen*, No. 17-cv-

11 06785-LB, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018) (citing *United States v.*

12 *Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc)). Where, as here, a plaintiff challenges

13 "a purely legal question that does not challenge the Attorney General's discretionary authority,"

14 1252(g) is no bar to the district court's consideration of the issue, "even if the answer to that

15 legal question—a description of the relevant law—forms the backdrop against which the

16 Attorney General later will exercise discretionary authority." *Hovsepian*, 359 F.3d at 1155. The

17 same reasoning applies to § 1226(e) regarding detention. *See Jennings v. Rodriguez*, 583 U.S.

18 281, 295 (2018) ("As we have previously explained, § 1226(e) precludes an alien from

19 'challeng[ing] a "discretionary judgment" by the Attorney General or a "decision" that the

20 Attorney General has made regarding his detention or release.' But § 1226(e) does not preclude

21 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'").

22          Plaintiff does not challenge a discretionary decision to detain them, but rather

23 Defendants' unlawful actions that would be the only pretense on which to detain and place him

24 in removal proceedings. *See also Student Doe*, 2025 WL 1134977 at *8 (holding § 1252(g) and §

25 1226(e) do not bar plaintiff's SEVIS-related claims).

26 ──────────────
   school, not the government. In *Doe 1 v. DHS*, No. 220CV09654VAPAGRX, 2020 WL 6826200,
27 at *4 (C.D. Cal. Nov. 20, 2020), aff'd sub nom. *Does 1 through 16 v. DHS*, 843 F. App'x 849
   (9th Cir. 2021), the plaintiffs were abroad—not in the U.S. where they would have constitutional
28 rights—and did not allege that they had a property interest in their SEVIS accounts.

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
PLAINTIFF'S REPLY ISO MOTION FOR TRO

### iii. Plaintiff clearly establishes a likelihood of immediate irreparable harm, and that the balance of harms and public interest weigh in favor of relief.

Defendants' efforts to downplay the consequences of their actions against Plaintiff (and similarly situated noncitizens) is astounding. First, Defendants do not even mention the irreparable harm that would result to Plaintiff or their U.S. citizen spouse, who suffers from significant health issues and is the primary caretaker for an ailing U.S. citizen relative, if Plaintiff were arrested, incarcerated, deported, or coerced into self-deporting. Second, the harm Plaintiff will suffer is not merely a monetary injury "related to their loss of future employment[.]" Opp. at 12 (falsely claiming that Plaintiff only alleges monetary damages). Third, the harm Plaintiff will suffer is not speculative. *Id*. at 12-13.

According to "Study in the States," which is DHS's own website, the termination of an F-1 SEVIS record triggers immediate legal consequences: "The student loses all on and/or off-campus employment authorization," "cannot re-enter the United States on the terminated SEVIS record," and "any associated F-2 or M-2 dependent records are terminated."[13] The guidance further indicates that such termination then requires departure from the country, as it states that "[ICE] agents may investigate to confirm the departure of the student." *Id.* That Plaintiff should simply ignore the guidance of the government agency is an absurd position for Defendants to take here. Moreover, Defendants have acted swiftly, and without notice,[14] in recent weeks to detain and deport noncitizens in precisely the same situation as Plaintiff. Sinodis Decl. at Exs. G, I, J, K. The threat of incarceration and deportation, including to a third country as threatened in email communications sent to similarly-situated plaintiffs, has been deemed sufficient to satisfy the irreparable harm factor for issuing a TRO. *See Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025); *Student Doe*, 2025 WL 1134977

---

[13] DHS, Study in the States (Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

[14] Defendants do not contest the well-settled principle that a violation of constitutional rights constitutes irreparable injury. *Hernandez,* 872 F.3d at 995-96 ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

*Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
PLAINTIFF'S REPLY ISO MOTION FOR TRO

1    at *8; Sinodis Decl. at Ex. I (TRO issued in *Mohammed H.*). But there is more.

2         In *Student Doe*, the District Court for the Eastern District of California also found that

3    the loss of or delay in obtaining employment authorization is an irreparable harm.[15] Similarly,

4    the *Doe* court in the Western District of Washington cited cases holding that interruption of a

5    student's educational program or progress can be an irreparable harm.[16] These deleterious

6    effects are present here. If Defendants achieve their objective of coercing Plaintiff to self-

7    deport, they will be unable to complete their post-graduate practical training and transition to

8    full-time employment as a software engineer. That, in turn, will cause economic and reputation

9    loss, and will harm their U.S. citizen spouse, who suffers from their own medical issues.

10   Further, Defendants may consider Plaintiff to be accruing unlawful presence in the United

11   States because of the SEVIS revocation, which would similarly result in irreparable harm.

12        It is unclear whether Defendants' contention that Plaintiff is not accruing unlawful

13   presence is accurate. Opp. at 13. USCIS recently changed its long-standing policy from 2009

14   regarding when unlawful presence begins accruing for those who were admitted for duration of

15   status (D/S), as Plaintiff was. As of January 25, 2025, the USCIS website reflects that

16   "[n]onimmigrants admitted for duration of status generally begin accruing unlawful presence

17   the day after their status ends, if they remain in the United States."[17] Previously, an individual

18   ────────────────────────────

19   [15] *Student Doe*, 2025 WL 1134977 at *7 citing inter alia *Batalla Vidal v. Nielsen*, 279 F. Supp.
     3d 401, 434 (E.D.N.Y. 2018), *vacated and remanded sub nom. DHS v. Regents of the Univ. of*
20   *California*, 591 U.S. 1 (2020) (finding that, if the DACA program were terminated, resulting loss
     of work authorization for DACA recipients would be an irreparable harm); *Karakozova v. Univ.*
21   *of Pittsburgh*, 2009 WL 1652469, at *4 (W.D. Pa. June 11, 2009) (holding that plaintiff could
     show irreparable harm from loss of position because she could lose her H-1B visa and have to
22   leave the country voluntarily or by removal, with no certainty of alternative relief)..
     [16] *See Doe*, 2025 WL 1141279, at *8 citing inter alia *Tully v. Orr*, 608 F.Supp. 2d 1222, 1225-26
23   (E.D.N.Y. 1985) (disenrolling a cadet from the U.S. Air Force Academy "just prior to his
     examinations and graduation" would be an irreparable harm where the cadet would face the
24   prospect of having to repeat courses, "delay[ ] in both his graduation and commissioning," and a
     "deleterious effect" on his future); *Maria v. Loyola Univ. of Chicago Stritch Sch. of Med.*, 2025
25   WL 96482, at *8 (N.D. Ill. Jan. 14, 2025) (accepting that loss of opportunity to participate in
     psychiatry residency is an irreparable harm, though denying injunction on other grounds).
26   [17] "Unlawful Presence and Inadmissibility," USCIS, available at: https://www.uscis.gov/laws-
27   and-policy/other-resources/unlawful-presence-and-inadmissibility (last visited Apr. 23, 2025).

28   *Doe v. Trump, et al.*, No. 4:25-cv-0314-JSW
     PLAINTIFF'S REPLY ISO MOTION FOR TRO

admitted in D/S would only begin accruing unlawful presence on the day USCIS denied a request in which it determines a status violation has occurred or on the day an immigration judge issues an order with a finding of a status violation.[18] Because this change was recent, there is uncertainty around how this is being applied in practice at this time. Defendants may very well change their position later on whenever they believe that doing so would benefit them.

For these, and many other reasons,[19] including Defendants' inability to identify any harm that the government would face were a TRO issued, Plaintiff will face irreparable harm absent the granting of injunctive relief.

### c. The Requirements of Rule 65(c) Do Not Apply.

Defendants ask that the Court require Plaintiff to post security should the Court grant the temporary restraining order or preliminary injunctive relief. Under the particular circumstances of this case, however, Plaintiff respectfully asks this Court to find that such a requirement is unnecessary. An order requiring Defendants to refrain from arresting, detaining, or transferring Plaintiff, and/or to refrain from giving Defendants' unlawful actions legal effect do not, and should not, result in any conceivable financial damages to Defendants. To be clear, the conditions of the TRO do not require Defendants to take *any* action, thereby incurring no costs to Defendants. To the contrary, the TRO prevents Defendants from taking actions that would only incur costs to Defendants—such as arresting or detaining Plaintiff.

### III.    CONCLUSION

For all the aforementioned reasons, the Court should grant Plaintiff's motion for a temporary restraining order.

---

[18] *See* USCIS, Interoffice Memorandum on Consolidation of Guidance Concerning Unlawful Presence, 13 (May 6, 2009), available at https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/revision_redesign_ AFM.PDF.

[19] The potential legal consequences and injuries that flow from SEVIS termination are myriad, which are more fully explained and illustrated by two exhibits attached herein that were filed in *BK, et al v. Noem, et al.*, 1:25-cv-00419-JMB-PJG (W.D. Mich.). See Sinodis Decl. at Ex. B (Declaration of Brian Childs); Ex. A (USCIS NOID).

Dated: April 23, 2025

Respectfully submitted,

/s/ Johnny Sinodis
Johnny Sinodis
Marc Van Der Hout
Attorneys for Plaintiff