CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
ELIZABETH D. KURLAN (CABN 255869)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: 415-436-7200
      Facsimile: 415-436-6748
      elizabeth.kurlan@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>    Defendants.<br><hr> | Case No. 4:25-cv-03140-JSW<br><br>**DEFENDANTS' MOTION FOR STAY PENDING APPEAL**<br><br><br><br>The Honorable Jeffrey S. White |
| S.Y., *et al.*,<br><br>      Plaintiff,<br><br>    v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, *et al*,<br><br>Defendants.<br><hr> | Case No. 4:25-cv-3244-JSW |
| ZHOUER CHEN, *et al*.<br><br>      Plaintiff, | Case No. 4: 25-cv-3292-JSW |

MOTION FOR STAY PENDING APPEAL
4:25-cv-03140; 3244; 3292; 3407; 3502 JSW

1

v.                                  )
2                                    )
                                     )
3  KRISTI NOEM, *et al*.,            )
                                     )
4  Defendants.                       )
                                     )
5                                    )
                                     )
6                                    )
_____ )
7  W.B.                              )    Case No. 4:25-cv-3407-JSW
                                     )
8                                    )
           Plaintiff,                )
9                                    )
       v.                            )
10                                   )
   KRISTI NOEM, *et al*.,            )
11                                   )
           Defendants.               )
12                                   )
                                     )
13                                   )
_____ )
14                                   )
   J.C. *et al*.,                    )    Case No. 4:25-cv-3502-JSW
15                                   )
           Plaintiffs,               )
16                                   )
       v.                            )
17                                   )
   KRISTI NOEM, *et al*.,            )
18                                   )
           Defendants.               )
19                                   )
                                     )
20                                   )
                                     )
21 _____ )

22

23

24

25

26

27

28

MOTION FOR STAY PENDING APPEAL
4:25-cv-03140; 3244; 3292; 3407; 3502 JSW

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   BACKGROUND ..........................................................................................................2

III.  STANDARD OF REVIEW ..........................................................................................4

IV.   ARGUMENT ...............................................................................................................4

    A.   Defendants Can Show A Strong Likelihood Of Success On The Merits ...........4

        1.   Nationwide Injunction ..........................................................................4

        2.   Failure To Show Irreparable Harm .......................................................6

        3.   Vague And Overbroad Injunction.........................................................8

        4.   Restriction on Authority to Terminate SEVIS Records........................9

    B.   The Balance of Equities and Public Interest Favor a Stay.................................10

V.    CONCLUSION ..........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*,
   133 S. Ct. 721 (2013) ................................................................................................. 11

*Califano v. Yamasaki*,
   442 U. S. 682 (1979) .................................................................................................. 6

*Center for Food Safety v. Vilsack*,
   636 F.3d 1166 (9th Cir. 2011) ................................................................................ 6, 7

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ................................................................................................... 11

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
   603 U.S. 799 (2024) ................................................................................................... 6

*Demery v. Arpaio*,
   378 F.3d 1020 (9th Cir. 2004) ................................................................................. 11

*Doe v. Noem*,
   No. 25-cv-633, 2025 WL 1397007 (W.D. Was. May 14, 2025) .............................. 7

*Downstate Stone Co. v. United States*,
   651 F.2d 1234 (7th Cir. 1981) ................................................................................... 9

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ................................................................................................... 8

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ................................................................................................... 4

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ................................................................................... 7

*Humane Soc'y of U.S. v. Gutierrez*,
   523 F.3d 990 (9th Cir. 2008) ..................................................................................... 4

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................................... 7

*Nken v. Holder*,
   556 U.S. 418 (2009) .............................................................................................. 4, 10

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ............................................................................................. 11

*Spielman Motor Sales Co., Inc. v. Dodge,*
    295 U.S. 89 (1935) ................................................................................................ 9

*Trump v. CASA, Inc.,*
    145 S. Ct. 2540 (2025) ................................................................................ 1, passim

*TRW, Inc. v. F.T.C.,*
    647 F.2d 942 (9th Cir. 1981) ............................................................................... 11

*United States v. W. T. Grant Co.,*
    345 U.S. 629 (1953) ............................................................................................. 11

**Statutes**

5 U.S.C. § 706 ....................................................................................................... 6

8 U.S.C. § 1101(a)(15) .......................................................................................... 9

8 U.S.C. § 1227 ..................................................................................................... 9

8 U.S.C. § 1227(a)(1)(B) ..................................................................................... 10

8 U.S.C. § 1252(f)(1) ............................................................................................ 8

8 U.S.C. § 1372(a)(1) ............................................................................................ 9

**Regulations**

8 C.F.R. § 214.1 ............................................................................................... 3, 12

8 C.F.R. § 214.1(d) ............................................................................................... 9

8 C.F.R. § 214.2(e) ............................................................................................... 9

8 C.F.R. § 214.2(f)(5)(i) ........................................................................................ 3

8 C.F.R. § 214.2(g) ............................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 62 ....................................................................... 2

## I.    INTRODUCTION

This Court entered a sweeping, nationwide injunction placing restrictions on lawful criminal and immigration enforcement with regard to an undefined and uncertified nationwide class of nonimmigrant students, notwithstanding Plaintiffs' failure to establish the likelihood of irreparable harm with respect to any of the named plaintiffs, much less any of the individuals not before the Court.  The nationwide scope of the injunction is irreconcilable with the Supreme Court's pronouncement in *Trump v. CASA, Inc.*, 145 St. Ct. 2540 (2025), which held that federal courts lack authority to enter universal injunctions. Compounding this issue is the fact that the prohibition on Defendants' immigration and criminal enforcement authority is not reasonably related to the alleged improper conduct underlying these lawsuits—the termination of Student and Exchange Visitor Information System ("SEVIS") records associated with the Plaintiffs by Defendant U.S. Immigration and Customs Enforcement's ("ICE") Student and Exchange Visitor Program ("SEVP") under the Student Criminal Alien Initiative ("SCAI"). Instead of preventing Defendants from arresting, incarcerating, or transferring individuals because of the SEVIS termination or alleged lapse in status due to the SEVIS termination, the preliminary injunction prohibits Defendants from arresting, incarcerating, or transferring these individuals for *any reason at all, including criminal violations*.  This expansive restriction on Defendants' law enforcement authority is an unwarranted exercise of judicial power that imperils the public safety, imposes a significant burden on the U.S. Department of Homeland Security ("DHS") components, and exposes DHS officers to a risk of contempt for carrying out lawful and important law enforcement actions.

Defendants have resolved a number of similar cases nationwide, including six other cases pending before this Court. Prior to the issuance of the injunction, Defendants reinstated the SEVIS records of all named Plaintiffs and others terminated under SCAI and confirmed that the effect of the retroactive activation of the SEVIS records is as though the termination did not happen, with no gaps or lapses in the record.  *See*, *e.g.*, *Doe v. Trump*, No. 4:25-cv-3140-JSW, Dkt. Nos. 62-1 (Watson Declaration), 68-2 (SEVP letter).  Much of the relief that the Court provided in the preliminary injunction, therefore, was provided voluntarily by Defendants prior to the injunction.  To the extent that the preliminary injunction goes beyond the relief sought in these lawsuits, however—reversal of the SEVIS termination and any adverse effects from that termination—that relief is not proper and, pursuant

1   to Federal Rule of Civil Procedure 62, Defendants respectfully move for a stay pending appeal of the

2   Court's May 22, 2025, Order granting a preliminary injunction.  Specifically, Defendants request that

3   the Court stay the universal scope of the preliminary injunction; stay the prohibition on Defendants'

4   ability to arrest, incarcerate, or transfer the named Plaintiffs for any reason independent of the

5   termination of their SEVIS records under the Student Criminal Alien Initiative; and stay the prohibition

6   on termination of SEVIS records for reasons unrelated the Criminal Alien Initiative.  The Court should

7   stay the injunction pending appeal in light of the strength of Defendants' arguments and the harms that

8   Defendants will suffer in the absence of a stay.

9   **II.    BACKGROUND**

10         The 23 Plaintiffs in these five related cases filed their complaints and motions for temporary

11  restraining orders ("TRO") between April 7, 2025, and April 22, 2025.  On April 17, 2025, the Court

12  granted Plaintiffs' motion for TRO.  *See*, *e.g.*, *Doe*, No. 4:25-cv-3140, Dkt. 16.  On April 25, 2025,

13  Defendants publicly announced that ICE was reactivating the SEVIS records of international students

14  whose SEVIS records were terminated in early April 2025. Dkt. 47 (Defendants' Statement).  This

15  reactivation includes students who filed lawsuits as plaintiffs and students who did not file lawsuits—

16  *i.e.*, ICE's reactivation of SEVIS records is independent of any civil litigation.  *Id.*  Defendants notified

17  the Court that the 23 Plaintiffs in these five cases all had their SEVIS records reactivated.  Dkt. No. 52.

18         By broadcast message dated April 26, 2025, ICE distributed a policy regarding the termination of

19  records in SEVIS.  *See Doe*, No. 4:25-cv-3140, Dkt. No. 51-1.  Under the policy guidance, ICE provides

20  a framework for when SEVP may terminate a foreign national's SEVIS record, including when there is

21  objective evidence of a foreign national's failure to comply with the terms of nonimmigrant status, and

22  explains how SEVIS terminations interact with visa revocations.  *Id.*

23         On May 6, 2025, Andre Watson provided a declaration on behalf of ICE stating that the SEVIS

24  records were restored to active and the restoration was retroactive to the date of termination.  He stated

25  that ICE had no plans to re-terminate the SEVIS records based solely on the NCIC hits.  *See Doe*, No.

26  4:25-cv-3140, Dkt. No. 62-1.  The declaration was provided to the Court on May 9, 2025.  *Id.*

27         On May 9, 2025, the Court granted the parties' stipulation to dismiss in six of the related cases,

28  *Bai v. Lyons*, No. 4:25-cv-3481 (Dkt. No. 38); *Qui v. Lyons*, No. 4:25-cv-3475 (Dkt. No. 42); *He v.*

1   *Noem*, No. 4:25-cv-3480 (Dkt. No. 23); *Kim v. Noem*, No. 4:25-cv-3383 (Dkt.No. 37); *Shah v. Lyons*,

2   No.4:25-cv-3549 (Dkt. No. 29); and *Wang v. Noem*, No. 4:25-cv-3323 (Dkt. No. 33).  Further, on

3   May 14, 2025, Defendants notified the Court that ICE was in the process of sending letters to all

4   students whose SEVIS records were reactivated, informing those students that "the effect of the

5   retroactive activation is as though the termination did not happen, and there are no 'gaps' or 'lapses'" in

6   their SEVIS records.  *See Doe*, No. 4:25-cv-3140, Dkt. No. 68-2.  At the hearing on the motions for

7   preliminary injunction on May 14, 2025, none of the 23 Plaintiffs in the five related cases articulated a

8   current harm following their SEVIS records reactivation. Dkt. No. 71 (Transcript) at 22.

9         On May 22, 2025, the Court granted Plaintiffs' motion for preliminary injunction and entered a

10  nationwide injunction enjoining DHS:

11             from arresting and incarcerating any of the named Plaintiffs in these cases
              and similarly situated individuals nationwide pending resolution of these
12            proceedings;

13            from transferring any of the named Plaintiffs in these cases and similarly
              situated individuals nationwide from outside the jurisdiction of their
14            residence pending the resolution of these proceedings;

15            from imposing any adverse legal effect on any named Plaintiffs in these
              cases and similarly situated individuals nationwide that otherwise may be
16            caused by the termination of their SEVIS record; and

17            from reversing the reinstatement of the SEVIS record of the Plaintiffs in
              these cases and similarly situated individuals nationwide who are
18            maintaining status under 8 C.F.R. section 214.2(f)(5)(i) for reasons not set
              forth in 8 Code of Federal Regulations section 214.1 without further
19            showing and approval by the Court.

20  *Doe*, No. 4:25-cv-3140, Dkt. No. 69.

21        On June 27, 2025, the Supreme Court issued its decision in *CASA*, holding that federal courts

22  lack equitable authority to issue universal (nationwide) injunctions.  145 S. Ct. at 2548, 2557 (holding

23  that the complete-relief principle is much narrower than universal injunctions because "the question is

24  not whether an injunction offers complete relief to everyone potentially affected by an allegedly

25  unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*")

26  (emphasis in original).

27        Following the Supreme Court's decision in CASA, Defendants conferred with Plaintiffs

28  regarding a potential stipulation to modify the Court's injunction, and the discussions are ongoing in a

few of the related cases. On July 21, 2025, Defendants filed notices of appeal to the Ninth Circuit in the five related cases. *Doe*, No. 4:25-cv-3140, Dkt. No. 77; *Chen v. Noem*, No. 4:25-cv-3292 (Dkt. No. 62); *J.C. v. Noem*, No. 4:25-cv-3502 (Dkt. No. 46); *S.Y. v. Noem*, No. 4:25-cv-3244 (Dkt. No. 57); and *W.B. v. Noem*, No. 4:25-cv-3407 (Dkt. No. 46).

## III.  STANDARD OF REVIEW

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal; (2) whether the movant will suffer irreparable harm absent a stay; (3) the harm that other parties will suffer if a stay is granted; and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## IV.  ARGUMENT

### A.    Defendants Can Show A Strong Likelihood Of Success On The Merits

Here, the Government will very likely prevail on appeal, because the Court issued an injunction (i) that exceeds the scope of judicial authority in granting prohibited universal injunctive relief to individuals not before the Court; (ii) without any showing of irreparable harm by Plaintiffs following the reactivation of their SEVIS records; and (iii) that contains overbroad and vague terms that expose DHS to a risk of contempt for carrying out lawful enforcement actions.

#### 1.    Nationwide Injunction

Following the Court's entry of the nationwide injunction, the Supreme Court issued its decision in *CASA*, 145 S. Ct. at 2548, which held that federal courts lack authority to enter universal (or nationwide) injunctions.  This Court's preliminary injunction, which applies not only to the named plaintiffs but to "similarly situated individuals nationwide," provides relief to nonparties and cannot survive the Supreme Court's ruling in *CASA*.

In *CASA*, the Supreme Court addressed "universal injunctions," or injunctions that bar the defendant from enforcing "a law or policy against *anyone*," in contrast to injunctions limited to the plaintiff.  145 S. Ct. at 2548 n.1.  The Court found that the statutory grant of jurisdiction over suits "in equity" "encompasses only those sorts of equitable remedies traditionally accorded by courts of equity at

1    our country's inception." *Id*. at 2551.  And "[n]either a universal injunction nor any analogous form of

2    relief was available … at the time of the founding." 145 S. Ct. at 2551.  Rather, "suits in equity were

3    brought by and against individual parties." *Id*.  "Because the universal injunction lacks a historical

4    pedigree, it falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id*.

5    at 2554.  At most, a court granting equitable relief "may administer complete relief *between the parties*."

6    *Id*. at 2557. "Under this principle, the question is not whether an injunction offers complete relief to

7    everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer

8    complete relief *to the plaintiffs before the court*." *Id*.  And even then, "[c]omplete relief is not a

9    guarantee—it is the maximum a court can provide." *Id*. at 2558.

10            The Supreme Court warned that "[c]omplete relief" is not "synonymous with universal relief,"

11   but is instead "a narrower concept: The equitable tradition has long embraced the rule that courts

12   generally 'may administer complete relief *between the parties*.'" *CASA*, 145 S. Ct. at 2557.  Thus,

13   although "the complete-relief principle has deep roots in equity," it does not "justif[y] award of relief to

14   nonparties." *Id*. at 2556. To be sure, there are cases where "afford[ing] the plaintiff complete relief[]

15   [leaves] the court [with] only one feasible option," which has "the practical effect of benefiting

16   nonparties"—but any such "benefit to nonparties . . . [is] merely incidental." *Id*. at 2557.  Here, though,

17   the benefit to nonparties is anything but incidental:  The Court expressly ruled that Defendants were

18   enjoined from arresting and incarcerating; transferring outside of the jurisdiction of residence; imposing

19   any adverse legal effect; or reversing the reinstatement of the SEVIS record for the named plaintiffs and

20   "similar situated individuals nationwide."  Dkt. No. 69 at 20–21.  *CASA* does not allow that.

21            In fact, the Court made *no* finding that nationwide injunctive relief was necessary to provide full

22   relief.  The Court's reasoning was based on the following:  (1) Universal relief is the norm under the

23   APA; (2) The Student Criminal Alien Initiative was a "uniform policy that uniformly wreaked havoc"

24   on similarly situated F-1 students; (3) There were no countervailing safety or security concerns that

25   require limiting the scope of relief; (4) There was no rational distinction between the parties and

26   nonparties; (5) The agency should be enjoined from "skirting their own mandatory regulations" because

27   the agency changed course to satisfy the Court's concerns. Dkt. No. 69 at 17–19.  None of this can be

28   squared with *CASA*.  It goes beyond simply enjoining Defendants with regard to the named plaintiffs

and providing incidental relief to nonparties—it provides relief directly *to* nonparties.  The Court does not attempt to explain why a universal injunction would make the *named parties*' relief more complete; it seeks to remedy what it perceives as the "havoc" wreaked on the lives of "similarly situated F-1 nonimmigrants across the United States."  Dkt. No. 69 at 19.  This injunction contravenes the long-standing principle that courts should not issue an injunction that "is 'more burdensome than necessary to redress [plaintiff's] asserted harms."  *CASA*, 145 S. Ct. at 2557 (quoting *Califano v. Yamasaki*, 442 U. S. 682, 702 (1979)).  Here, the scope of the injunction is certainly more burdensome than necessary, covering thousands of unnamed individuals whose hypothetical and unknown injuries have no impact on any harm suffered by the named plaintiffs.

The Court's grant of nationwide injunctive relief is improper under the APA, which only provides for a reviewing court to "hold unlawful and set aside agency actions . . . found to be . . . arbitrary, capricious, or otherwise not in accordance with law."  5 U.S.C. § 706.  The term "set aside" means to cancel, annul or revoke. *See Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 829 (2024) (Kavanaugh, concurring) (quoting Black's Law Dictionary 1612 (3d ed. 1933)).  That is not what the challenged preliminary injunction here does.  Rather, it imposes affirmative limitations on Defendants' authority to act.  The APA does not empower courts to impose sweeping injunctions against the Executive Branch's enforcement authority.  Here, the district court's injunction does not merely set aside an agency rule but imposes affirmative requirements that apply nationwide to "similarly situated individuals" who are neither parties to this action nor identified in any certified class.  Such relief contravenes *CASA*'s directive that equitable remedies must be limited to traditional party-specific relief and cannot extend to strangers to the litigation.  Moreover, by enjoining immigration and criminal enforcement actions nationwide, the Court has impermissibly imposed sweeping relief under its APA review authority.  Because the APA does not authorize such broad remedies—and because *CASA* squarely forecloses this form of universal injunction—the nationwide scope of the order should be stayed and ultimately vacated.

### 2.    Failure To Show Irreparable Harm

Plaintiffs did not come close to showing the "threat of immediate and irreparable harm" that is necessary for a preliminary injunction.  *Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir.

1    2011) (denying preliminary injunction because, "[a]t the time Plaintiffs sought the preliminary

2    injunction, none of the irreparable harms they sought to prevent were likely. Their alleged irreparable

3    harms hinged on future [regulatory] decisions, and nothing prevented Plaintiffs from filing a new legal

4    challenge if and when those decisions were made.").

5         Plaintiffs claimed that the termination notation still existed in their records, even though

6    Defendants confirmed that the effect of the retroactive activation of Plaintiffs' SEVIS records is "as

7    though the termination did not happen." *Doe*, No. 4:25-cv-3140, Dkt. No. 68-2.  Plaintiffs also contend

8    that they cannot get back the time they lost in their work and education from the SEVIS record

9    termination (approximately 3 weeks), and they speculate that it will impact their future work and

10   studies.  But this is simply speculation.  "In the absence of a likelihood of injury to the named plaintiffs,

11   there is no basis for granting injunctive relief that would restructure the operations of the Border Patrol

12   and that would require ongoing judicial supervision of an agency normally, and properly, overseen by

13   the executive branch."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999); *see also*

14   *Lewis v. Casey*, 518 U.S. 343, 359 (1996) ("These two [injuries] were a patently inadequate basis for a

15   conclusion of systemwide violation and imposition of systemwide relief."). So too here.

16        Other courts considering requests for preliminary injunction in SEVIS cases found no irreparable

17   harm in similar circumstances.  In *Doe v. Noem*, the district court denied plaintiff's motion for

18   preliminary injunction following the retroactive reactivation of his SEVIS record, because "there is no

19   present irreparable injury to support a preliminary injunction." *Doe*, No. 25-cv-633, 2025 WL 1397007,

20   at *5 (W.D. Was. May 14, 2025). The court noted:

21             Plaintiff has not demonstrated "continuing, present adverse effects" that
          warrant injunctive relief. . . . *Vilsack*, 636 F.3d at 1173. Plaintiff is currently

22        able to, and will still be able to absent injunction, work and study with an
          active SEVIS record and not face the prospect of removal based on this

23        particular SEVIS termination. Just as in *Vilsack*, the irreparable harms
          Plaintiff cites hinge on future decisions, and the fact that he suffered the

24        same harms *in the past* cannot support prospective relief.

25   2025 WL 1397007, at *5 (emphasis added). Notably, because the district court's ruling of no irreparable

26   harm applies to nonparties that this Court's injunction now covers, this Court is essentially reversing the

27   order of the district court in that case.

28        Here, Plaintiffs have identified *no* harms following the agency's retroactive reactivation of their

SEVIS records. In fact, they only relied on past harms, claiming that they will "never get that time back" that they lost during the three weeks when their records were inactive. Dkt. No. 71 at 22. Thus, Plaintiffs have not shown any threat of immediate and irreparable harm that would support a preliminary injunction.

### 3.     Vague And Overbroad Injunction

The Court's preliminary injunction order, which prohibits Defendants from arresting, incarcerating, or transferring individuals for reasons unrelated to the SEVIS terminations, is unwarranted and exceeds the Court's authority under 8 U.S.C. § 1252(f)(1) and is foreclosed by the Supreme Court's decision in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022).  Section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" the provisions of the [Immigration and Nationality Act ("INA")] governing, *inter alia*, the detention and removal of noncitizens "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."  8 U.S.C. § 1252(f)(1). The Supreme Court in *Aleman Gonzalez* interpreted this language to mean that district courts lack the power to enter class wide injunctive relief that restrains the government's enforcement of the relevant INA provisions. *Aleman Gonzalez*, 596 U.S. at 550 (holding that "§ 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions").

Here, the Court's order restrains the government from effectuating arrests or detentions for any reason unrelated to SEVIS terminations—thus intruding directly upon the enforcement of statutory provisions governing arrest and removal under the INA. This sweeping restraint enjoins the operation of immigration enforcement laws on a broad, class wide basis. Such relief is precisely what *Aleman Gonzalez* prohibits, as it transforms individualized APA review into a mechanism for judicial oversight of DHS's statutory enforcement authorities, in direct contravention of Section 1252(f)(1).

Furthermore, the Court's order is not limited to *immigration* enforcement but also encompasses criminal enforcement activities by all of DHS, including Homeland Security Investigations ("HSI") and the United States Secret Service.  "The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional . . . . To justify such interference there

must be exceptional circumstances and a clear showing that an injunction is necessary to afford adequate protection of constitutional rights . . . ." *Spielman Motor Sales Co., Inc. v. Dodge*, 295 U.S. 89, 95 (1935); *see also Downstate Stone Co. v. United States*, 651 F.2d 1234, 1238 (7th Cir. 1981) (discussing limited exceptions to rule).  Here, the injunction is so broad as to prevent enforcement of *all* criminal statutes against the plaintiffs and all those "similarly situated."  There is absolutely no justification to do so, and this portion of the injunction must be stayed pending appeal.

Moreover, the court's prohibition on arrest authority unconnected to the SEVIS terminations bears no nexus to the Plaintiffs' alleged injuries or the relief they seek. Even assuming *arguendo* that the SEVIS terminations were unlawful, the injunction's extension to arrest and detention for unrelated reasons ventures far beyond what is necessary to afford relief for any cognizable harm. Under *Aleman Gonzalez*, district courts may not issue such relief, and thus, this portion of the injunction must be stayed pending appeal.

### 4.    Restriction on Authority to Terminate SEVIS Records

Restricting the agency's ability to terminate a SEVIS *record* to the reasons outlined in 8 C.F.R. § 214.1(d), which governs an agency's ability to terminate a *nonimmigrant's status*, is not supported by statute or regulation. DHS established SEVIS pursuant to its Congressional mandate to "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to foreign nationals seeking F-1 student status. *See* 8 U.S.C. § 1372(a)(1). In contrast, 8 C.F.R. § 214.1(d) relates to the termination of an alien's nonimmigrant status—which includes any nonimmigrant status, not just F-1 student status—and has no bearing on SEVIS records which do not even exist for nonimmigrants who are not students. *See* 8 C.F.R. § 214.1(d) ("the nonimmigrant status of an alien shall be terminated by…"); *see also* 8 U.S.C. § 1101(a)(15) (defining classes of nonimmigrants). Thus, the Plaintiffs' F-1 status was never terminated by SEVIS record termination.

Here, the injunction is improper because it restricts ICE's authority to terminate a SEVIS record for specific reasons, such as if a student fails to maintain his nonimmigrant status after the record is reactivated (*see, e.g.,* 8 C.F.R. §§ 214.2(e)–(g)) or engages in other unlawful activity that would render him removable from the United States under the INA (*see, e.g.,* 8 U.S.C. § 1227). It also prevents SEVP

1    from terminating an individual's SEVIS record when the Department of State revokes a nonimmigrant

2    visa with immediate effect which can serve as a basis for removability under 8 U.S.C. § 1227(a)(1)(B).

3    Put differently, there are many grounds for removability, and there are multiple ways to lose status.

4    Simply having a SEVIS record terminated is not, by itself, one of them, since a SEVIS record and F-1

5    status are not the same thing.

### B.    The Balance of Equities and Public Interest Favor a Stay.

7        The balance of harms, equities, and public interest favor a stay pending appeal. *See Nken*, 556

8    U.S. at 435. The government will suffer irreparable harm if the Court's injunction remains in effect. As

9    the Supreme Court explained in *CASA*, "[w]hen a federal court enters a universal injunction against the

10   Government, it 'improper[ly] intru[des]' on 'a coordinate branch of the Government' and prevents the

11   Government from enforcing its policies against nonparties," and that intrusion is sufficient to

12   demonstrate irreparable harm warranting a stay.  *CASA*, 145 S. Ct. at 2561 (citation omitted) (second

13   and third alternation in original); *see* 2562. And because limiting an injunction to the named Plaintiffs

14   would cause them no harm, "the balance of equities does not counsel against awarding the Government

15   interim relief." *Id.*

16       The Court's broad, structural injunction will impede ICE's ability to carry out its statutory law

17   enforcement mission by effectively barring criminal and immigration enforcement actions against F-1

18   nonimmigrant students, regardless of whether those individuals pose a threat to public safety or national

19   security.  The injunction's broad prohibition on arrests and detentions—even those unrelated to SEVIS

20   terminations—will interfere with critical enforcement operations.  The injunction prevents ICE from

21   responding to threats that may include, for example, individuals in possession of contraband or those

22   who trespass onto high security miliary installations, placing the safety and security of the public at risk.

23       Moreover, the injunction imposes an operational burden that ICE may be unable to meet. ICE's

24   Enforcement and Removal Operations ("ERO") lacks a real-time, reliable method of determining during

25   field arrests whether an individual is covered by the injunction.  This operational uncertainty has a

26   chilling effect on enforcement and raises the risk that ICE officers may unintentionally violate the

27   court's order during time-sensitive and dangerous operations.  In effect, ICE may be forced to forgo

28   enforcement actions altogether to avoid the risk of contempt—a result that undermines the agency's

1  ability to fulfill its public safety mandate.

2       Finally, the injunction disrupts ongoing, congressionally mandated initiatives aimed at ensuring

3  compliance with immigration law, such as ICE's efforts to enforce Optional Practical Training ("OPT")

4  requirements.  It also compromises ICE's ability to issue Notices to Appear or detain students whose

5  conduct—including immediate visa revocations—renders them removable.  Even with a narrow

6  interpretation, the injunction shields thousands of individuals from enforcement despite criminal or

7  immigration violations. Such sweeping constraints constitute irreparable harm to ICE and the public and

8  warrant a stay pending appeal.

9       On the other hand, Plaintiffs will not suffer irreparable harm in the event of a stay.  As a

10  preliminary matter, where a plaintiff seeks injunctive relief, a case "is normally moot upon the

11  termination of the conduct at issue" unless "there is a likelihood of recurrence." *Demery v. Arpaio*, 378

12  F.3d 1020, 1025–26 (9th Cir. 2004).  Such a case is "no longer a 'Case' or 'Controversy' for purposes of

13  Article III," "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct

14  that precipitated the lawsuit." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726, 727 (2013).  To this point,

15  ICE has retroactively reinstated Plaintiffs' SEVIS records, stated it will not terminate them again based

16  solely on the NCIC hit that led to termination, and there have been no adverse effects from the

17  termination and reactivation.

18       In any event, even if cessation of conduct does not moot a case, a plaintiff must still bear the

19  burden of demonstrating that equitable relief is warranted, a showing that requires "more than the mere

20  possibility" of recurrence "which serves to keep the case alive."  *United States v. W. T. Grant Co*., 345

21  U.S. 629, 633 (1953); *see also TRW, Inc. v. F.T.C.*, 647 F.2d 942, 954 (9th Cir. 1981) (discussing

22  difference between standards and burdens of proof).  To obtain equitable relief, a plaintiff must establish

23  a "likelihood of substantial and immediate irreparable injury."  *City of Los Angeles v. Lyons*, 461 U.S.

24  95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).  That "requirement . . . cannot

25  be met where there is no showing of any real or immediate threat that the plaintiff will be wronged

26  again." *Lyons*, 461 U.S. at 111.  Plaintiffs have made no such showing here.

27       The balance of equities and public interest overwhelmingly favor a stay pending appeal. The

28  preliminary injunctive relief ordered by the Court on May 22, 2025, is overbroad.  While Defendants do

1  not seek a stay of a limited preliminary injunction, Defendants submit that the Court granted improper

2  relief when it enjoined Defendants "from arresting and incarcerating any of the named Plaintiffs in these

3  cases and similarly situated individuals nationwide," and from terminating "the SEVIS record of the

4  Plaintiffs in these cases and similarly situated individuals nationwide . . . for reasons not set forth in [8

5  C.F.R. § 214.1]."

6  **V.    CONCLUSION**

7          For the reasons stated above, this Court should grant Defendants' motion to stay its preliminary

8  injunction to the extent that it is not limited to the named plaintiffs or the injury suffered, prevents

9  Defendants from arresting and detaining individuals nationwide for reasons unrelated to the SEVIS

10  record terminations, and from terminating a SEVIS record for reasons outside of 8 C.F.R. § 214.1.

11  Defendants respectfully request an immediate ruling on this motion, after which time Defendants intend

12  to seek relief from the Ninth Circuit.

13

14  DATED:  August 8, 2025                    Respectfully submitted,

15                                            CRAIG H. MISSAKIAN
                                              United States Attorney
16

17                                            */s/ Elizabeth D. Kurlan*
                                              ELIZABETH D. KURLAN
18                                            Assistant United States Attorney

19                                            Attorneys for Defendants

20

21

22

23

24

25

26

27

28